Filed 2/25/16

### CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DENNIS WALLACE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>COUNTY OF STANISLAUS,<br><br>    Defendant and Respondent. | F068068<br><br>(Super. Ct. No. 663764)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County. Hurl William Johnson III, Judge.

Law Offices of Stephen M. Murphy, Stephen M. Murphy, P. Bobby Shukla; and Tania B. Rose for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Morin I. Jacob and Steven Tang for Defendant and Respondent.

-ooOoo-

This disability discrimination case was brought by Sheriff's Deputy Dennis Wallace against the County of Stanislaus (County) under Government Code section 12940.[1] Wallace alleged disability discrimination based on County's removing him from

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.G. of the Discussion.

[1] All unlabeled statutory references are to the Government Code.

his job as bailiff and placing him on an unpaid leave of absence because of its incorrect assessment that he could not safely perform his duties as a bailiff even with reasonable accommodation.

The primary legal issue presented in this appeal is how to instruct a jury on the employer's intent to discriminate against a disabled employee and, more specifically, what role "animus" plays in defining that intent. The trial court believed proof of animus or ill will was required and modified the version of California Civil Jury Instruction (CACI) No. 2540 in effect at the time to include a requirement that Wallace prove County regarded or treated him "as having a disability in order to discriminate."

On appeal, Wallace challenges this instruction and the related question in the special verdict form. We conclude the instruction and special verdict form contained error. The proper standard regarding employer intent or motivation was decided by our Supreme Court in *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*). Under *Harris*, Wallace could prove the requisite discriminatory intent by showing his actual or perceived disability was a "substantial motivating factor/reason" for County's decision to place him on a leave of absence. (*Id*. at p. 232.)[2] California law does not require an employee with an actual or perceived disability to prove that the employer's adverse employment action was motivated by animosity or ill will against the employee. Instead, California's statutory scheme protects employees from an employer's erroneous or mistaken beliefs about the employee's physical condition. (§ 12926.1, subd. (d).) In short, the Legislature decided that the financial consequences of an employer's mistaken belief that an employee is unable to safely perform a job's essential functions should be

---

[2]     *Harris* was decided after the jury trial of Wallace's disability discrimination claim. The substantial-motivating-reason test adopted in *Harris* was incorporated into subsequent versions of CACI Nos. 2507 and 2540.

2

borne by the employer, not the employee, even if the employer's mistake was reasonable and made in good faith.

We further conclude that the instructional error was prejudicial and remand Wallace's disability discrimination claim for a retrial. The retrial shall be limited to determining the amount of damages resulting from County's decision to place Wallace on an unpaid leave of absence from January 5, 2011, until January 30, 2013, when Wallace returned to patrol duties. A limited retrial is appropriate because the jury found that (1) County regarded or treated Wallace as if he were disabled, (2) Wallace was able to perform the essential job functions of a deputy sheriff with or without reasonable accommodation, and (3) County failed to prove Wallace's disability would increase the danger to himself or others while he performed those job functions. In addition, we find as a matter of law that the reason County placed Wallace on a leave of absence on January 5, 2011, was its mistaken belief that he could not safely perform the essential job functions of a deputy sheriff. Thus, the substantial-motivating-reason element was proven. Also, we find as a matter of law that County's decision to place Wallace on leave was a substantial factor in causing Wallace to suffer economic losses. Based on these findings, the retrial can be limited to the issues related to the amount of Wallace's damages.

We therefore reverse the judgment and remand for a limited retrial.

## FACTS

Wallace was born in 1963. He worked for the E & J Gallo Winery from 1986 to 1994. In 1995, Wallace was employed by the City of Hughson Police Department.

In December 1997, Wallace was hired by County as a deputy sheriff. He started in patrol and then worked in various positions with the sheriff's department.

In October 2007, Wallace injured his left knee and filed a workers compensation claim for that injury. He later reinjured his left knee during a river sweep. He was

3

treated for left knee pain by Jonathan Cohen, M.D., an orthopedic surgeon who prescribed a knee brace. Wallace wore the knee brace at work until he had knee surgery on September 9, 2008. After the surgery performed by Dr. Cohen, Wallace took a Labor Code section 4850[3] paid leave of absence until December 15, 2008, when he returned to light duty.

From January 2009 until April 2009, Wallace took additional paid leave because of the knee injury. After this leave, Wallace began to work a light duty assignment in the property and evidence room. His restrictions at the time were limited climbing, limited walking on uneven ground, and limited running. These limitations were part of a May 2009 report prepared by Dr. Pedram Vaezi, a chiropractor and workers compensation "qualified medical evaluator." This report was approved by Dr. Cohen.

Wallace worked light duty until he began another leave of absence in September 2009, because of his knee. By March 12, 2010, the one year of paid leave under Labor Code section 4850 had been exhausted.

On April 1, 2010, Wallace hand delivered a copy of Dr. Vaezi's supplemental report dated September 16, 2009, to the sheriff's department. Peggy Huntsinger, an assistant risk manager with County, testified that County did not receive the supplemental report earlier because the third-party administrator that handled County's workers compensation claims had not forwarded it to County. The restrictions for Wallace's left knee, as clarified in the supplemental report, indicated (1) no prolonged walking in excess of 30 to 45 minutes without a five-minute break, (2) no walking on uneven ground

---

**3** Labor Code section 4850 provides that law enforcement officers, firefighters and certain other personnel temporarily or permanently disabled in the course of duty are entitled to a leave of absence without loss of salary in lieu of workers compensation benefits for up to one year or until retirement on a disability pension. (*Ritchie v. Workers' Comp. Appeals Bd.* (1994) 24 Cal.App.4th 1174, 1180.)

4

in excess of 30 minutes without a five-minute break, and (3) no prolonged standing in excess of 30 to 45 minutes without a five-minute break.

On April 9, 2010, Wallace received and initialed a "NOTICE OF OFFER OF MODIFIED OR ALTERNATIVE WORK" on a preprinted workers compensation form. County offered Wallace an assignment as a bailiff for at least 12 months at his pre-injury rate of pay. County's cover letter referred to the position as a permanent modified duty assignment with the restrictions stated in Dr. Vaezi's supplemental report. It also stated the restrictions "are to be considered 'Permanent' until your Agreed Medical Exam …."

During the period that Wallace worked as a bailiff, the sergeants who supervised Wallace had no issues with his performance. Sergeant Owens's performance evaluation of Wallace rated him as above average.

In October 2010, Wallace underwent the agreed medical exam with Richard Baker, MD, an orthopedic surgeon, whose practice is limited to workers' compensation agreed medical exams. During the exam, Wallace told Dr. Baker about weakness and intermittent pain in his left knee, back pain, daily pain and occasional popping in his left ankle, pain in his shoulders, and daily, continuous mild pain in his neck. Dr. Baker's diagnosis of Wallace's left knee described medial and lateral meniscus tears, subluxation of the patella, synovitis, cartilaginous defect, femoral condyle, partial tear of the ACL and a tear of the MCL.

Based on his examination of Wallace, Dr. Baker issued a report dated October 25, 2010, that listed various "preclusions" including (1) no lifting more than 50 pounds, (2) no bilateral overhead work or repetitive right over shoulder work, (3) no forceful pushing, pulling, torqueing with the right upper extremity, (4) no weight bearing more than 75 percent of the time, (5) no more than occasional climbing, squatting, kneeling, crouching, crawling or pivoting, and (6) no walking on uneven ground more than 75 percent of the day. Dr. Baker used the terms "preclusion" and "precluded" to mean

5

something that should be avoided 90 to 100 percent of the time, with 90 percent being a reasonable estimate.

Based on Dr. Baker's report, a disability coordinator for County wrote a letter to Captain Tim David listing Wallace's work restrictions, to which Captain David responded, "No, we do not have modified or alternative work available." Undersheriff William Heyne was made aware of the restrictions in Dr. Baker's report and was involved in the decision to remove Wallace from his bailiff position on the grounds that Wallace could not perform the job with those restrictions. Heyne relied on Dr. Baker's restrictions, thought County was bound by those restrictions, and did not ask Wallace's supervisors if he was able to perform the job. Heyne explained the decision by stating, "The issue is, once [Dr. Baker] puts the restrictions down, we have to do something. Because if we don't do something, then we are liable because, if [Wallace] gets injured, if somebody else gets injured because [Wallace is] unable to perform his job, because everybody would say, wait a second, [with] his physical injuries [Wallace] can't wrestle with a suspect; yet you put him in an environment where he would have to."

On January 5, 2011, Wallace attended a meeting with County Human Resources consultant Brandi Welsh, Lieutenant Mick Hardenbrook and other representatives from the Sheriff's Department. Welsh testified the purpose of the meeting was to discuss medical work restrictions with Wallace, to explain the department's conclusions based on those work restrictions, and to start the discussion with Wallace about whether he was interested in looking at other County positions. As to the department's conclusions, Wallace was told that (1) he was to be removed from his position as bailiff that day and (2) the department had not identified any assignment as deputy sheriff that could accommodate his work restrictions. Wallace stated that he could perform the functions of a bailiff and also mentioned working as a detective or school resource officer. County did not alter its decision to place Wallace on leave. Welsh described County's treatment

6

of Wallace following the January 5, 2011, meeting by stating, "He had been accommodated with a leave of absence." Following this statement, counsel asked Welsh: "You are saying an unpaid leave of absence is an accommodation to an employee who may have a disability?" Welsh answer, "Yes."

On January 10, 2011, Welsh and Wallace met again. Welsh stated the purpose of the meeting was to determine if Wallace wanted to look at other County positions after he had had an opportunity to consider the information provided at the earlier meeting. In discussing other positions, Wallace stated that he was interested only in positions with safety retirement.[4]

From January 10, 2011, to February 2012, Welsh had no communications with Wallace about his work status.[5] In a letter to Wallace dated February 9, 2012, Welsh set forth a history of Wallace's case, including the work restriction identified by Dr. Baker, and addressed Wallace's statement at his January 2012 deposition that his employment with County had been terminated. The letter stated Wallace had not been terminated, but was on a leave of absence and his deposition testimony "demonstrated a misunderstanding regarding County's obligation to follow your medical work restrictions." The letter stated County had not received any updated medical information about Wallace's ability to work and asked Wallace to provide County with information about (1) any changes in his medical work status or (2) any interest he had in alternative County employment (i.e., not as a deputy sheriff) so that he and County could engage in the interactive process.

---

[4] During trial, the safety retirement benefit was described as 3 percent at age 50 and a nonsafety retirement was described as 2 percent at age 55.

[5] As outlined later, Wallace filed a complaint for disability discrimination on May 20, 2011.

Welsh and Wallace communicated sporadically from February to July 2012. On July 3, 2012, shortly before the first trial, County offered to send Wallace to a fitness-for-duty examination to obtain updated medical information. County offered the examination because time had passed since Dr. Baker's October 2010 report and Wallace continued to maintain that he could perform the essential functions of a deputy sheriff. County also offered Wallace a job as a welfare fraud investigator, a nonsafety retirement position.

Dr. LaRoche performed the fitness-for-duty examination and issued a report dated January 25, 2013. Based on Dr. LaRoche's report, County placed Wallace back at work. On January 30, 2013, **over three months** before the second trial, Wallace returned to full duty as a patrol office.

## PROCEEDINGS

*The Complaint*

On May 20, 2011, a few days before his accruals for sick leave and vacation were exhausted, Wallace filed a complaint against County and the sheriff's department alleging causes of action under the California Fair Employment and Housing Act (FEHA) (§ 12900 et seq.) for (1) disability discrimination, (2) failure to accommodate his disability, (3) failure to engage in the interactive process, and (4) failure to prevent discrimination.

*First Jury Trial*

In July 2012, the first jury trial began. On August 7, the trial court instructed the jury on the four causes of action and counsel presented their closing arguments. The jury concluded its deliberations on August 15, after resolving the first cause of action and deadlocking on the other three.

As to the disability discrimination claim, the jury's answers to the first three questions in the special verdict show it found (1) County treated Wallace as if he had a

8

disability that limited his ability to engage in a major life activity; (2) Wallace was able to perform the essential job duties of a deputy sheriff with or without reasonable accommodation; and (3) County failed to prove Wallace would endanger himself or others in performing the essential job duties of a deputy sheriff. The jury answered "No" to the fourth question, which asked: "Did the County of Stanislaus regard or treat Dennis Wallace as having a physical disability in order to discriminate?" This finding resolved the disability discrimination cause of action in favor of County.

The jurors were not able to resolve the remaining three causes of action because they deadlocked on question Nos. 7, 12 and 14 of the special verdict with votes of six to six, seven to five, and seven to five, respectively.[6] As to question No. 11 (the first element of Wallace's claim that County failed to engage in the interactive process), the jury found that Wallace had been willing to participate in the interactive process to determine whether a reasonable accommodation would allow him to perform the essential functions of a deputy sheriff. Based on the jury's inability to resolve the final three causes of action, the court declared a mistrial as to those claims.

*Motions for Summary Adjudication*

After the first trial, each side filed a motion for summary adjudication. The trial court granted County's motion and eliminated the fourth cause of action (failure to prevent discrimination) based on the jury's resolution of the discrimination claim in favor of County. The trial court denied Wallace's motion for summary adjudication, which sought an order that the direct estoppel doctrine (i.e., issue preclusion) barred County

---

[6] Question No. 7 asked whether a reasonable accommodation existed that would have allowed Wallace to perform the essential functions of a deputy sheriff, an element of Wallace's claim that County failed to provide a reasonable accommodation. Question No. 12 asked whether County failed to participate in a timely, good faith interactive process with Wallace to determine whether a reasonable accommodation could be made. Question No. 14 asked whether County failed to take reasonable steps to prevent discrimination, the main element of Wallace's fourth cause of action.

from relitigating the questions on which Wallace prevailed in the first trial—namely, question Nos. 1, 2, 3 and 11 of the special verdict.

*Second Jury Trial*

In May 2013, a second jury trial was held on the remaining causes of action for (1) failure to accommodate and (2) failure to engage in the interactive process. Using a general verdict, the jury unanimously found in favor of County on both claims.

In July 2013, the trial court implemented the jury's verdict by filing a judgment in favor of County. Wallace filed a timely appeal from the judgment and the orders on the motions for summary adjudication. County did not file a protective cross-appeal with respect to the first jury's findings that were favorable to Wallace.

## DISCUSSION

I.    OVERVIEW OF FEHA'S PROHIBITION OF DISCRIMINATION

    A.    <u>Section 12940</u>

Section 12940 defines various unlawful employment practices, including certain types of employment discrimination. Wallace's disability discrimination cause of action is based on subdivision (a) of section 12940 and that statute is the primary source of the elements to Wallace's claim. Therefore, we quote a substantial portion of the text of that subdivision:

> "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California:
>
> "(a) For an employer, because of the race, religious creed, color, national origin, ancestry, *physical disability, mental disability, medical condition*, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading

10

to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

"(1) This part does not prohibit an employer from refusing to hire or discharging an employee with a *physical or mental disability*, or subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee with a *physical or mental disability*, where the employee, because of his or her *physical or mental disability*, [(A)]is unable to perform his or her essential duties even with reasonable accommodations, or [(B)] cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations."[7] (Italics added.)

Except for the terms "physical disability" and "mental disability," the foregoing statutory text defines both disability discrimination causes of action and discrimination claims based on race, religion, color, national origin, age and sex. In distilled form, section 12940 makes it unlawful for an employer "to discriminate against" a person "in terms, conditions, or privileges of employment" "because of" the listed factors. Therefore, from the perspective of the wording of subdivision (a) of section 12940, disability discrimination claims would appear to be similar to other types of discrimination claims. This appearance is misleading.

B.     Disability Discrimination Claims

Although the same statutory language that prohibits disability discrimination also prohibits discrimination based on race, age, sex, and other factors, we conclude that disability discrimination claims are fundamentally different from the discrimination claims based on the other factors listed in section 12940, subdivision (a). These differences arise because (1) additional statutory provisions apply to disability discrimination claims, (2) the Legislature made separate findings and declarations about protections given to disabled persons, and (3) discrimination cases involving race,

---

[7]     The provisions of subdivision (a)(1) of section 12940 that address physical or mental disability have parallel provisions in subdivision (a)(2) that relate to the "employee's medical condition."

11

religion, national origin, age and sex, often involve pretexts for the adverse employment action—an issue about motivation that appears less frequently in disability discrimination cases.

### 1. *Direct Evidence of Motive—No Shifting Burdens*

The distinction between cases involving *direct evidence* of the employer's motive for the adverse employment action and cases where there is only *circumstantial evidence* of the employer's discriminatory motive is critical to the outcome of this appeal. There is a vast body of case law that addresses proving discriminatory intent in cases where there was no direct evidence that the adverse employment action taken by the employer was motivated by race, religion, national origin, age or sex. In such cases, proof of discriminatory motive is governed by the three-stage burden-shifting test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*).[8] (See *St. Mary's Honor Center v. Hicks* (1993) 509 U.S. 502, 506; *Texas Dept. of Community Affairs v. Burdine* (1981) 450 U.S. 248, 252-253.) The three stages are (1) the plaintiff making a prima facie showing of employment discrimination, (2) the employer producing a legitimate reason for the adverse employment action, and (3) the burden shifting back to the plaintiff to prove intentional discrimination by offering evidence of the employer's discriminatory motive, which can include attacking the employer's proffered reasons as pretexts for discrimination. (*Guz*, *supra*, 24 Cal.4th at pp. 354-356.)

The three-stage framework and the many principles adopted to guide its application do not apply in discrimination cases where, like here[9], the plaintiff presents

---

[8] The California Supreme Court has adopted the *McDonnell Douglas* test. (*Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

[9] Based on Dr. Baker's report on Wallace's physical limitations, the County placed him on unpaid leave.

12

direct evidence of the employer's motivation for the adverse employment action.  In many types of discrimination cases, courts state that direct evidence of intentional discrimination is rare (e.g. *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860, quoting *Guz*, *supra*, 24 Cal.4th at p. 354), but *disability* discrimination cases often involve direct evidence of the role of the employee's actual or perceived disability in the employer's decision to implement an adverse employment action.  Instead of litigating the employer's reasons for the action, the parties' disputes in disability cases focus on whether the employee was able to perform essential job functions, whether there were reasonable accommodations that would have allowed the employee to perform those functions, and whether a reasonable accommodation would have imposed an undue hardship on the employer.  To summarize, courts and practitioners should not automatically apply principles related to the *McDonnell Douglas* test to disability discrimination cases.  Rather, they should examine the critical threshold issue and determine whether there is direct evidence that the motive for the employer's conduct was related to the employee's physical or mental condition.

2.  *Legislative Findings Specific to Disabilities*

Another basis for distinguishing disability discrimination claims from discrimination alleged on other grounds is the specific legislative findings and declarations relating to disabilities.  These finding are contained in section 12926.1,[10]

---

[10]  County's arguments about discriminatory intent requiring animus do not mention section 12926.1 or the legislative intent to protect employees from erroneous or mistaken beliefs about their physical condition.  Indeed, none of the briefs filed in this court cite section 12926.1.  In addition, County has not argued that this court should recognize the limited defense of reasonable mistake that has been adopted by some federal courts applying the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101 et seq.).  (See *Taylor v. Pathmark Stores, Inc.* (1999) 177 F.3d 180, 182-183 [generally, employer's innocent mistake in regarding plaintiff as disabled from working is sufficient to subject employer to liability under the ADA, but recognizing "a limited defense of reasonable mistake where the employee is responsible for the employer's erroneous perception"].)

13

which was added to the FEHA in 2000 when the Legislature enacted the Prudence Kay Poppink Act. (Stats. 2000, ch. 1049, §§ 1, 6.) That act made substantial changes to the disability discrimination provisions of the Unruh Civil Rights Act (Civ. Code, § 51, et seq.) and the FEHA.

As relevant to this appeal, the Legislature declared that California's definitions of physical disability, mental disability, and medical condition are broad and are intended to be construed to protect employees and applicants "from discrimination due to an actual or perceived physical or mental impairment that is disabling, potentially disabling, or perceived as disabling or potentially disabling." (§ 12926.1, subd. (b).)[11] The term "perceived" has some bearing on the employer's state of mind or motive, an issue in this appeal. The Legislature also declared that the statutory definitions of physical and mental disability "provide protection when an individual is *erroneously or mistakenly believed* to have any physical or mental condition that limits a major life activity." (§ 12926.1, subd. (d), italics added.) The phrase "erroneously or mistakenly believed" also is relevant to the state of mind or motive of an employer that is alleged to have discriminated against someone with a physical or mental disability.

In contrast to mistaken beliefs about an employee's disability, an employer's honest but mistaken belief in legitimate reasons for an adverse employment action can preclude liability in other discrimination contexts, such as race, age or sex. (*Guz, supra*, 24 Cal.4th at p. 358; *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 170-171.)

### 3. *Definition of Physical Disability*

This appeal involves issues relating to Wallace's physical condition and, therefore, we set forth the pertinent parts of the FEHA's definition of physical disability:

---

**11** Currently, the terms "medical condition," "mental disability," and "physical disability" are defined in subdivisions (i), (j) and (m) of section 12926. The related concepts of "essential functions," "reasonable accommodation," and "undue hardship" are defined in subdivisions (f), (p) and (u) of section 12926.

14

"(m) 'Physical disability' includes, but is not limited to, all of the following:

"(1) Having any physiological disease, disorder, condition … that does both of the following:  [¶]  (A) Affects one or more of the following body systems: neurological, immunological, musculoskeletal ... [¶] (B) Limits a major life activity. For purposes of this section:

"(i) 'Limits' shall be determined without regard to mitigating measures such as medications, assistive devices, prosthetics, or reasonable accommodations, unless the mitigating measure itself limits a major life activity.

"(ii) A physiological disease, disorder, condition … limits a major life activity if it makes the achievement of the major life activity difficult.

"(iii) 'Major life activities' shall be broadly construed and includes physical, mental, and social activities and working.  [¶] … [¶]

"(4) *Being regarded or treated by the employer or other entity covered by this part as having, or having had, any physical condition that makes achievement of a major life activity difficult*.  (§ 12926, italics added.)

Paragraph (4) of this definition implements the Legislature's intent to protect individuals "erroneously or mistakenly believed to have any physical or mental condition that limits a major life activity."  (§ 12926.1, subd. (d); see Stats. 2000, ch. 1049, §§ 5, 6.)

C.      Other Terms Essential to the Disability Discrimination Claim

Our overview of disability discrimination claims under section 12940, subdivision (a) ends with the definition of two statutory terms related to the employer's motivation—specifically, "to discriminate against" and "because of."  Under subdivision (a) of section 12940, it is an unlawful employment practice for an employer "*to discriminate against* [an employee] in compensation or in terms, conditions, or privileges of employment" "*because of*" the employee's physical disability, unless the difference in treatment is "based upon a bona fide occupational qualification."  (§ 12940, subd. (a), italics added.) The FEHA defines many words and phrases, but it does not define "discriminate" or "because of." (See §§ 12925, 12926.)

### 1. *Meaning of Discriminate*

In the absence of a statutory definition, we turn to the ordinary meaning of the words. Black's Law Dictionary (9th ed. 2009) defines "discrimination" as "[d]ifferential treatment; esp., a failure to treat all personal equally when no reasonable distinction can be found between those favored and those not favored." (*Id.* at p. 534.) "Differential treatment" is consistent with how courts have described discrimination in cases involving the disparate treatment (as opposed to disparate impact) type of employment discrimination. An employer "discriminates" when it *treats the employee differently* "because of" a factor listed in the FEHA. (E.g., *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 658, fn. 3 [disparate treatment is easily understood—the """"employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin""""].) Accordingly, we conclude that, as used in subdivision (a) of section 12940, the term "to discriminate" means to treat differently.

Our discussion of the meaning of "discriminate" would not be complete without noting that "discriminate" often is used in a negative or pejorative sense and, when so used, a person who discriminates against one individual in favor of another is regarded as having committed a wrong. (Black's Law Dict., *supra*, at pp. 534-535.) Taking this approach in a disability discrimination case can lead to error because treating a physically disabled person differently from persons who are not disabled is not automatically wrong. Our Supreme Court recognized this idea by stating that, "in disability discrimination actions, the plaintiff has not shown the defendant has done anything wrong until the plaintiff can show he or she was able to do the job with or without reasonable accommodation." (*Green v. State of California* (2007) 42 Cal.4th 254, 265 (*Green*).) The following illustrates that discriminating against (i.e., treating differently) a physically disabled person sometimes is legitimate, even desirable. Suppose a taxi company is hiring new drivers. The company has a legitimate reason to treat applicants with 20/20

16

vision differently from applicants who are blind. Thus, when discussing *disability* discrimination, discriminatory reasons cannot automatically be regarded as illegitimate.

Consequently, the many disparate treatment cases that use the phrase "legitimate nondiscriminatory reasons" with reference to an employment decision (e.g., *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 36) should not be read as implying that there are never *legitimate discriminatory reasons* for an adverse employment action in a case involving disability. The FEHA itself recognizes that employers have legitimate reasons for discriminating against disabled persons (i.e., treating them differently)— reasons that have no parallel when the discriminatory employment action is based on race, religion, national origin, age or sex. Those legitimate reasons include whether a disabled employee, even with reasonable accommodation, can perform essential job duties and do so safely. (§ 12940, subd. (a)(1); see *Green*, *supra*, 42 Cal.4th at p. 265; CACI No. 2544 [affirmative defense – health of safety risk].) In addition, an employer has a legitimate reason for not providing an accommodation "that is demonstrated by the employer … to produce undue hardship … to its operation." (§ 12940, subd. (m); see § 12926, subd. (u) [definition of undue hardship]; CACI No. 2545 [affirmative defense -- undue hardship].)

### 2. Meaning of "Because Of"

Under subdivision (a) of section 12940, it is unlawful for an employer "to discriminate against" an employee "*because of*" the employee's physical disability. The phrase "because of" is ambiguous as to the type or level of intent (i.e., motivation) and the connection between that motivation and the decision to treat the disabled person differently. This ambiguity is closely related to County's argument that it is liable only if motivated by discriminatory animus.

The statutory ambiguity in the phrase "because of" was resolved by our Supreme Court about six months after the first jury trial. (*Harris*, *supra*, 56 Cal.4th 203 [meaning

17

of "because of" for purposes of § 12940, subd. (a)].)  Accordingly, the trial court and counsel did not have the benefit of the *Harris* decision or the subsequent modifications to CACI No. 2540 (Disability Discrimination—Disparate Treatment—Essential Factual Elements) and CACI No. 2507 ("Substantial Motivating Reason" Explained).

In *Harris*, the plaintiff was a bus driver who alleged she was fired because of her pregnancy.  (*Harris*, *supra*, 56 Cal.4th at p. 211.)  The city claimed she was fired for poor job performance.  (*Ibid*.)  The trial court used CACI No. 2500 to instruct the jury that the plaintiff had to prove her pregnancy was a "motivating factor/reason for the discharge." (*Harris, supra,* at p. 213.)  The Supreme Court addressed the meaning of the statutory phrase "because of" to answer the question of what the trier of fact is to do "when it finds that a mix of discriminatory and legitimate reasons motivated the employer's decision." (*Id*. at p. 215.)  The court held that the jury should have been instructed to determine whether discrimination was "'a *substantial* motivating factor/reason.'"  (*Id*. at p. 232, italics added.)  Based on this statutory interpretation, the court concluded the jury instruction requiring the plaintiff to prove discrimination was merely "'a motivating factor/reason'" for her termination was erroneous.  (*Ibid*.)  The court heightened the standard for the link between the employer's consideration of the employee's disability and the adverse action taken by the employer to help ensure "that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision." (*Ibid*.)  The court explained that the newly adopted substantial-motivating-factor test could be met and employers exposed to liability "even if other factors would have led the employer to make the same decision at the time." (*Ibid*.)

We note that the court in *Harris* discussed the employer's motivation and the link between the employer's consideration of the plaintiff's physical condition and the adverse employment action without using the terms "animus," "animosity," or "ill will."

18

The absence of a discussion of these terms necessarily implies an employer can violate section 12940, subdivision (a) by taking an adverse employment action against an employee "because of" the employee's physical disability even if the employer harbored no animosity or ill will against the employee or the class of persons with that disability.

Based on *Harris*, we conclude that an employer has treated an employee differently "because of" a disability when the disability is a substantial motivating reason for the employer's decision to subject the employer to an adverse employment action. This conclusion resolves how the jury should have been instructed on the County's motivation or intent in connection with the disability discrimination claim.

## II. INSTRUCTIONAL ERROR—INTENT TO DISCRIMINATE

### A. The Jury Instruction on Discriminatory Intent

Wallace contends the first jury found against him on his disability discrimination claim due to instructional error involving the element of discriminatory intent. That element was addressed by an instruction stating Wallace was required to prove "that the County of Stanislaus regarded or treated Dennis Wallace as having a disability in order to discriminate and such wrongful discrimination was a motivating reason for the adverse employment action."[12] In accordance with this instruction, the fourth question of the special verdict asked: "Did the County of Stanislaus regard or treat Dennis Wallace as having a physical disability in order to discriminate?" The jury answered "No," which decided the disability discrimination cause of action in favor of County.

---

[12] The trial court also instructed the jury on (1) the other elements of the claim; (2) the meaning of "perceived," "adverse employment action," "substantial factor," and "essential job duties"; and (3) County's defense that Wallace was unable to perform his job without endangering the health or safety of himself or others.

19

B.    Trial Court's Modification of CACI

The trial court and counsel discussed the jury instructions and what the jury should be told about the employer's intent to discriminate. That discussion included references to the version of CACI No. 2540 then in effect, which stated in part:

> "6.  [That [name of plaintiff]'s [history of [a]] [e.g., physical condition] was a motivating reason for [name of defendant]'s [decision to [discharge/refuse to hire/[other adverse employment action]] [name of plaintiff]/conduct];]" (CACI No. 2540 (Spring 2013 ed.).)[13]

That version of CACI No. 2540 did not use the term "animus" and, except for the language about "a motivating reason," did not mention the employer's intent to discriminate. The trial court told counsel that it read the case law as requiring employee plaintiffs to "prove that the actions taken by the employer were done with the intent to discriminate," which the court equated with "animus." The court proposed modifying CACI No. 2540 to "read that the County took the action in order to discriminate against the plaintiff." Counsel for plaintiff disagreed with the proposed language and counsel for County supported it by arguing that intent and animus has to be shown in any discrimination cause of action alleging disparate treatment. After counsel stated their arguments, the court decided to modify the jury instruction to include the language it had proposed.

C.    Requisite Intent to Discriminate

  1.    *Substantial-Motivating-Reason Test*

We conclude that where, as here, an employee is found to be able to safely perform the essential duties of the job, a plaintiff alleging disability discrimination can establish the requisite employer intent to discriminate by proving (1) the employer knew that plaintiff had a physical condition that limited a major life activity, or perceived him to have such a condition, and (2) the plaintiff's actual or perceived physical condition

---

[13]    This edition contained the June 2012 revisions to CACI No. 2540.

20

was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action. As described in part I.C., *ante*, this conclusion is based on (1) the interpretation of section 12940's term "because of" adopted in *Harris*; (2) our discussion of the meaning of the statutory phrase "to discriminate against"; and (3) the guidance provided by the current versions of CACI Nos. 2540 and 2507.

Therefore, the jury instruction that Wallace was required to prove that County "regarded or treated [him] as having a disability in order to discriminate" was erroneous.

### 2. *Role of Animus*

County has argued emphatically that Wallace was required to show "animus" to establish County had the requisite intent to discriminate and the trial court's modification accurately expressed that requirement. For instance, County's respondent's brief contends the "in order to discriminate" phrase in the jury instruction and special verdict form "clarified that there must be a causal link between animus and adverse action."[14] County supports this contention about animus with the following argument and authority:

> "To establish a prima facie case of disparate treatment discrimination under the [FEHA], generally 'the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought [or] was performing competently in the position he [held], (3) he suffered an adverse employment action …, and (4) some other circumstance suggests discriminatory motive.' (*Guz* [*supra,*] 24 Cal.4th 317, 355.) The elements plaintiff must prove include 'the existence of discriminatory animus and a causal link between it and the challenged action' to 'raise a presumption of discrimination ….' (*McCaskey v. California State [Automobile] Assn.* (2010) 189 Cal.App.4th 947, 979 [(*McCaskey*)], citing *Guz, supra*, 24 Cal.4th at p. 355.) Further, when an employer proffers a facially sufficient lawful reason for the challenged employment action, the

---

**14** The word "animus" is ambiguous because it can be interpreted narrowly to mean "ill will" or "animosity" or can be interpreted broadly to mean "intention." (Black's Law Dict., *supra*, at p. 103.) In this case, it appears County uses "animus" to mean something more than the intent described by the substantial-motivating-reason test adopted in *Harris*.

question becomes whether the employee has shown, or can show, that the challenged action resulted in fact from discriminatory animus rather than other causes. (*Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 112.)"

The cases in this quote (1) predated *Harris*, (2) do not involve *disability* discrimination,[15] and (3) required circumstantial evidence to prove a discriminatory motive, which distinguishes them from Wallace's situation. (See pt. I.B.1, *ante*.)

During oral argument, counsel for County referred to *Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34 (*Gelfo*) as a disability discrimination case that required to plaintiff to prove "animus." In *Gelfo*, the court used the word "animus" twice:

"We agree with Gelfo that, on this record, the first four elements of model instruction CACI No. 2540 are established. But no jury has yet had an opportunity to resolve the factual issues of *animus*, harm, and the substantiality of Lockheed's conduct as a factor in causing any harm Gelfo may have suffered. Those matters remain to be established by the final three elements of CACI No. 2540." (*Gelfo*, *supra*, 140 Cal.App.4th at pp. 53-54, fns. omitted and italics added.)

In footnote 14, which was omitted in the preceding quote, the court stated:

"Gelfo need not show Lockheed 'had it in for him.' To support a claim of disability discrimination, a plaintiff need only show '*animus*' directed at the disability. (See, e.g., *Rodriguez v.* Con[A]gra *Grocery Products Company* [(5th Cir. 2006)] 436 F.3d [468,] 480 [ADA].) It is of no moment that the employer has no ill will against the plaintiff (or anyone else with a bad back)." (*Gelfo*, *supra*, 140 Cal.App.4th at p. 54, fn. 14, italics added.)

The court's use of the word "animus" should be interpreted in context of the opinion as a whole. Earlier in the opinion, the court (1) referred to the January 2006 version of CACI No. 2540; (2) stated that the form instruction typically requires the plaintiff to prove the "[p]laintiff's physical condition was a motivating reason for the refusal to hire;" and (3) stated that the form jury instruction was modified to require the

---

[15]    *Guz* and *McCaskey* involved age discrimination claims and *Reeves v. Safeway Stores, Inc., supra,* 121 Cal.App.4th 95 involved a retaliatory discharge claim related to complains about sexual harassment in the workplace.

plaintiff to establish that the "[d]efendant's belief that plaintiff had a limiting condition was a motivating reason for the refusal to hire." (*Gelfo*, *supra*, 140 Cal.App.4th at pp. 50-51.) These references to "a motivating reason" and the court's clear rejection of the idea that a plaintiff claiming disability discrimination must prove the employer harbored ill will against the plaintiff or a class of individuals with the same disability suggest the court used "animus" as the equivalent of motive and not animosity or ill will. Such a usage of "animus" is consistent with the second definition stated in Black's Law Dictionary—namely, "intention." (Black's Law Dict., *supra*, at p. 103.) Therefore, under our interpretation of the *Gelfo* decision, its meaning would not change if either "motive" or "intention" were substituted for the court's two uses of "animus."

Therefore, we do not interpret *Gelfo* as supporting County's argument that an animus or intention exceeding a substantial motivating factor was an essential element of Wallace's disability discrimination cause of action. Furthermore, we conclude the Fifth Circuit also used the term "animus" to mean intention when it stated "we are concerned under the ADA with *animus* directed at the disability, and not necessarily with *animus* directed at the individual ...." (*Rodriguez v. ConAgra Grocery Products Company*, *supra*, 436 F.3d at p. 480, italics added; see *Taylor v. Pathmark Stores, Inc.*, *supra*, 177 F.3d at p. 183 [plaintiff alleging disability discrimination under the ADA "need not be the victim of negligence or malice"].)

We published our discussion of motive and animus to alert practitioners and other courts that "animus" is an imprecise term that can cause confusion when used in disability discrimination cases with direct evidence that the employer's motive for taking an adverse employment decision was the plaintiff's actual or perceived disability. To avoid this confusion, courts and practitioners would be better served by limiting their use of the terms "animus" and "ill will" to employment discrimination cases involving proof of an illegitimate motive by circumstantial evidence. (E.g., *Reeves v. Sanderson*

23

*Plumbing Prod.* (2000) 530 U.S. 133, 151 [jury's verdict in favor of discharged employee reinstated; employee established a prima facie case of age discrimination, created a jury issue as to the falsity of the legitimate reasons offered by the employer for his discharge, and introduced additional evidence that his supervisor was motivated by age-based animus and was principally responsible for the firing].)

D.      Prejudice Resulting from Instructional Error

1.      *Basic Principles*

An appellant who shows an instructional error occurred also must establish the error was prejudicial.  (*Adams v. MHC Colony Park, L.P.* (2014) 224 Cal.App.4th 601, 613; Cal. Const., art. VI, § 13 [miscarriage of justice required for reversal].)

Prejudice or a miscarriage of justice exists when there is "a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 (*Soule*).)  In cases of instructional error, a reasonable probability that "the jury would have returned a more favorable verdict" is sufficient to establish prejudice.  (*Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1073; see Code of Civ. Proc., § 475 [reversal is warranted where "a different result would have been probable if" the instructional error had not occurred].)

2.      *Prejudice Occurred in this Case*

In the present case, the evidence easily demonstrates a reasonable probability that a properly instructed jury would have found Wallace's disability was a substantial motivating reason for County's decision to remove him from his job as a bailiff.  Indeed, the evidence allows this court to find as a matter of law that Wallace established the substantial-motivating-reason element of his disability discrimination cause of action.

Initially, we note that this case involves an employer that claims the employee was removed from his job because of an inability to perform the job safely.  County has not

24

argued that its decision was unrelated to Wallace's physical condition or the impact of his physical condition on his ability to perform the duties of a bailiff. County's argument that it had legitimate reasons for placing Wallace on a leave of absence was described to the jury in the following instruction:

> "The County of Stanislaus claims that its conduct was lawful because, even with reasonable accommodations, Dennis Wallace was unable to perform an essential job duty without endangering his health or safety or the health or safety of others. To succeed, the County of Stanislaus must prove the following: [¶] That even with reasonable accommodations, Dennis Wallace could not perform the duties of a deputy sheriff without endangering his health or safety or the health or safety of others to a greater extent than … an individual without a disability performing the job duty."

The jury clearly rejected County's argument about safety when it answered "No" to question No. 3 in the special verdict. That question asked if County had proven that Wallace would endanger himself or others to a greater extent than an individual without a physical disability in performing the essential job duties of a deputy sheriff with or without reasonable accommodation.

With County's position about its motive as background, we next address whether we can find as a matter of law that Wallace's actual or perceived disability was a substantial motivating reason for County's decision to place Wallace on a leave of absence on January 5, 2011. Prior to oral argument, we requested supplemental briefing from the parties on this issue. (See § 68081.) County's supplement brief argues that "the record demonstrates that the County was acting according to legitimate, non-discriminatory business interests and a desire to diligently follow the law." In County's view, placing Wallace on leave was "the most reasonable accommodation under the circumstances, motivated by a desire to follow the law as it relates to reasonably accommodating employees with disabilities, and to protect the health and safety of Wallace, his coworkers, and the community he served."

25

County's position suffers from a number of flaws. First, its argument about "legitimate, non-discriminatory business interests" mischaracterizes its actual position. In reality, County is arguing that it had legitimate reasons for treating Wallace differently (i.e., discriminating against him) by placing him on leave.

Second, County's version of the facts is contrary to the findings of the first jury. That jury found (1) Wallace was able to perform the essential job functions of a deputy sheriff with or without reasonable accommodation and (2) County failed to prove Wallace would endanger himself or others in performing those essential job functions. As a result of these findings, what County describes as legitimate business reasons actually were erroneous reasons based on County's mistaken belief about Wallace's ability to perform his job safely.

Third, assuming County had described its beliefs accurately and admitted that they were erroneous, it would have prevailed only if California law considers an employer's mistaken beliefs as providing a legitimate reason for treating employees with a perceived disability differently—that is, subjecting them to adverse employment action. If County's position is interpreted as implying such a legal argument, that argument fails. The Legislature has declared that the FEHA is intended to protect employees "from discrimination due to an actual or perceived physical or mental impairment." (§ 12926.1, subd. (b).) In addition, the Legislature intended to "provide protection when an individual is *erroneously or mistakenly believed* to have any physical or mental condition that limits a major life activity." (§ 12926.1, subd. (d), italics added.) In light of this clear expression of legislative intent, County cannot rely on its mistaken beliefs about Wallace's physical condition and safety to claim its reasons were legitimate under California law.

Fourth, County's contention that placing Wallace on leave was the most reasonable accommodation cannot be reconciled with the legal principles applicable to

26

the facts of this case. The jury found that Wallace could perform the essential job functions of a deputy sheriff, either with or without accommodation. Under California law, "[w]hen an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence." (Cal. Code Regs., tit. 2, § 11068, subd. (c).) Pursuant to this regulation, County's decision to place Wallace on a leave of absence cannot be described as a lawful accommodation of a physical disability.

In summary, we conclude there is no dispute that County's motive for placing Wallace on a leave of absence was its mistaken perception that his physical condition created a safety issue. It logically follows that County's perception of Wallace's physical condition was a substantial motiving reason for County's decision to place Wallace on a leave of absence. Consequently, there is no need for a trier of fact to consider the substantial-motivating-reason element on remand—it is established as a matter of law.

E.     Causal Link to Damages

The next element of Wallace's disability discrimination claim is whether County's decision to place Wallace on a leave of absence was a substantial factor in causing harm to Wallace. Wallace has sought to recover economic losses (i.e., lost earnings and benefits) and noneconomic losses (i.e., emotional distress and mental suffering).

*1.     Economic Losses*

It is clear from the record before this court that County's decision to place Wallace on an unpaid leave of absence was a cause in fact of Wallace going on leave and, in turn, going on unpaid leave caused Wallace to suffer adverse economic consequences because he was no longer performing a paying job. The adverse consequences (i.e., harm) included Wallace using up his sick leave and vacation time within less than five months after being placed on leave and thereafter receiving no wages or salary. Based on these economic consequences, we are able to find as a matter of law that the decision to place

27

Wallace on a leave of absence was a substantial factor in causing him to lose wages and benefits that would have been earned if he had continued to work as a sheriff's deputy. Consequently, on remand, a reasonable trier of fact could not rationally find that there is no causal connection between the adverse employment action and the economic losses suffered by Wallace while on leave. However, a trier of fact will need to determine the amount of Wallace's economic losses.

### 2. *Noneconomic Losses*

As to Wallace's claim that he suffered noneconomic losses in the form of mental suffering and emotional distress, there is a factual dispute about whether Wallace experienced any mental suffering and emotional distress and, if he did, whether County's decision to place Wallace on a leave of absence was a substantial factor in causing that harm. Furthermore, it is not clear from the record and briefing whether Wallace is claiming future noneconomic losses. Therefore, we cannot decide these issues regarding past and future economic losses as a matter of law and, accordingly, they must be resolved on remand.

### F. Scope of Retrial

The largest issue about the scope of the retrial is whether the first jury's findings on Question Nos. 1, 2 and 3 of the special verdict should be binding on a retrial of Wallace's disability discrimination cause of action. We requested supplemental briefing on this issue and referred the parties to the following legal standard and authority:

> "It is a firmly established principle of law that '[t]he appellate courts have power to order a retrial on a limited issue, if that issue can be separately tried without such confusion or uncertainty as would amount to a denial of a fair trial.' [Citation.] The underlying rationale is easy to discern: to require a complete retrial when an issue could be separately tried without prejudice to the litigants would unnecessarily add to the burden of already overcrowded court calendars and could be unduly harsh on the parties." (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776; see *Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801; see Code

28

Civ. Proc., § 43 ["courts of appeal … may … direct a new trial or further proceedings to be had].)

The parties appear to accept the fundamental principle that prejudice to the litigants should be avoided and the inquiry into prejudice includes examining the possibility that confusion or uncertainty would result from a limited retrial. County argues a full retrial is necessary and contends the fundamental principles about prejudice and avoiding confusion and uncertainty were explained by the following statements in *Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655 (*Bullock*):

> "Whether an issue can be tried separately without prejudice to any party depends on the particular circumstances of each case. [Citation.] Any doubts as to whether a new trial limited to damages is appropriate should be resolved in favor of a complete new trial." (*Id.* at pp. 696-697.)

We note that the court in *Bullock* followed its statement about *any doubts* by observing:

> "The question whether a limited new trial is appropriate typically arises in cases involving excessive or inadequate compensatory damages. [Citation.] A new trial limited to determining the amount of compensatory damages ordinarily is proper unless the record indicates that the finding of liability resulted from a compromise verdict, in which case the new trial should encompass both liability and damages." (*Bullock*, *supra*, 159 Cal.App.4th at p. 697.)

Guided by the foregoing principles and our ability to make findings as a matter of law on the elements of substantial-motivating-reason and the causal link between County's decision to place Wallace on a leave of absence and economic losses suffered by Wallace, we conclude that the scope of the retrial can be limited to issues relating to damages. Any confusion that might result from a potential retrial of Wallace's other three causes of action can be avoided because the retrial need not include those claims. The parties have agreed that, if the retrial of the first cause of action is limited to issues involving damages, there is no need to retry the other three causes of action. In particular, Wallace's supplemental letter brief explicitly acknowledged that the damages

29

that he might recover under those three causes of action would be redundant to those recovered under his disability discrimination claim. Therefore, we conclude that prejudicial confusion and uncertainty will be avoided by a retrial of the first cause of action limited to determining (1) the amount of Wallace's economic damages and (2) the existence and amount of noneconomic damages caused by County's decision to place him on a leave of absence on January 5, 2011, and not returning him to duty until January 30, 2013.

        G.     Other Issues*

Based on our conclusions about the limited scope of the retrial, it is not necessary for this court to address the claims of error related to the second jury trial and Wallace's causes of action for failure to reasonably accommodate his disability, failure to engage in the interactive process, and failure to prevent discrimination. Nevertheless, for the sake of providing the parties a better understanding of this case, we note that our earlier rejection of County's argument that a leave of absence was a reasonable accommodation in the circumstance of this case (see pt. II.D.2, *ante*) necessarily implies instructional error occurred in the second jury trial. In particular, the second jury was instructed that "reasonable accommodation" could include providing the employee with accrued paid leave or additional unpaid leave. The instruction was prejudicially misleading because it was an incomplete statement of the law regarding reasonable accommodation and leaves of absence. (Cal. Code Regs., tit. 2, § 11068, subd. (c) ["When an employee can work with a reasonable accommodation other than a leave of absence, an employer may not require that the employee take a leave of absence"]; see generally, Befort, *The Most Difficult ADA Reasonable Accommodation Issues: Reassignment and Leave of Absence* (2002) 37 Wake Forest L.Rev. 439.)

---

\*      See footnote, *ante*, page 1.

As to Wallace's claim that the issue preclusion doctrine should have been applied to the first jury's findings in any retrial of the remaining causes of action, we note that those findings were not final when the trial court ruled on the issue preclusion question. However, those findings will become final upon the issuance of remittitur by this court because County did not challenge them by filing a protective cross-appeal. In light of the fluid nature of "finality," this court would not have analyzed the trial court's decision, but would have independently applied the elements of California's issue preclusion doctrine to reach a determination whether to treat the first jury's findings as binding in any retrial of Wallace's other three causes of action. It appears that a subsequent jury asked to decide those other three causes of action might be confused by the first jury's finding that Wallace was able to perform the essential job functions of a deputy sheriff with or without reasonable accommodation because the subsequent jury would not know whether the first jury determined a reasonable accommodation was unnecessary or, alternatively, there was a reasonable accommodation that would have allowed Wallace to safely perform the duties of a sheriff's deputy. Also, in the latter situation, the subsequent jury would not know what that accommodation was.

Lastly, we do not address Wallace's request for attorney fees under section 12965 because we have not directed the trial court to enter judgment in Wallace's favor and, therefore, he currently does not qualify under the statute as a prevailing party. (See *Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 975 [under § 12965, subd. (b), trial court has discretion to award attorney fees to prevailing party in FEHA action].)

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for further proceedings for damages on Wallace's first cause of action for disability discrimination, consistent with the scope of retrial described in part II.F of this opinion and the findings this court has made as a matter of law.

31

Wallace shall recover his costs on appeal.


                     _____

                              FRANSON, J.

WE CONCUR:


_____

KANE, Acting P.J.


_____

POOCHIGIAN, J.

**POOCHIGIAN, J. – CONCURRING.**

I concur in the court's opinion and judgment, but write separately to underscore an important limitation on the scope of Government Code[1] section 12940's definition of disability discrimination.

The court's opinion expresses the following rule of law:

> "We conclude that where, as here, an employee is found to be able to safely perform the essential duties of the job, a plaintiff alleging disability discrimination can establish the requisite employer intent to discriminate by proving (1) the employer knew that plaintiff had a physical condition that limited a major life activity, or perceived him to have such a condition, and (2) the plaintiff's actual or perceived physical condition was a substantial motivating reason for the defendant's decision to subject the plaintiff to an adverse employment action." (Maj. opn., *ante*, at p. 20.)

This holding indicates that negating section 12940, subdivision (a)(1) is a *sufficient* condition to establish disability discrimination under the California Fair Employment and Housing Act (FEHA) (§ 12900 et seq.), but I write separately to clarify that it is also a *necessary* condition. Section 12940, subdivision (a)(1)'s "specific language unambiguously provid[es] that an adverse employment action on the basis of disability is *not prohibited* if the disability renders the employee unable to perform his or her essential duties, even with reasonable accommodation." (*Green v. State of California* (2007) 42 Cal.4th 254, 264, original italics.) Consequently, in order to establish that an employer has engaged in disability discrimination under FEHA, an employee must also show that the "disability would not prevent the employee from performing essential duties of the job, at least not with reasonable accommodation." (*Green*, *supra*, at p. 262.) Because the employee bears the burden of proof on this issue (*id.* at pp. 263–264), there is no reason to exclude it as a coequal element required to establish disability discrimination.

---

[1] All further statutory references are to the Government Code unless otherwise stated.

This is not an insignificant issue. Section 12940, subdivision (a)(1) reflects one of the primary ways disability discrimination differs from other forms of discrimination under FEHA.**2** If our legal standard does not clearly incorporate this important limiting provision, the reach of FEHA could extend beyond the Legislature's intent. Consider a hypothetical with the following facts: (1) an employer is advised by a physician that an employee's physical condition renders him or her unable to perform essential job duties even with reasonable accommodation, (2) the physician's evaluation is, in fact, correct,**3** and (3) the employer removes the employee from the position because of the physical condition. Under section 12940, subdivision (a)(1), the employer has clearly not engaged

---

**2** As the court's opinion notes, physical disability claims are "fundamentally different" than other discrimination claims. (Maj. opn., *ante*, p. 11.) The word discriminate is often used "in a negative or pejorative sense." (*Id.* at p. 16.) But "discriminating against (i.e., treating differently) a physically disabled person sometimes is legitimate …." (*Ibid.*) "The FEHA itself recognizes that employers have legitimate reasons for discriminating against disabled persons (i.e., treating them differently) – reasons that have no parallel when the discriminatory employment action is based on race, religion, national origin, age or sex. Those legitimate reasons include whether a disabled employee, even with reasonable accommodation, can perform essential job duties and do so safely. (§ 12940, subd. (a)(1) ….)" (*Id.* at p. 17.)

Identifying these differences between disability discrimination and other forms of discrimination is important. But we should also spell out exactly how these differences affect the definition of discrimination in the disability context.

**3** Section 12940, subdivision (a)(1) does not deal solely with discriminatory *motive* – it is also concerned with the factual reality of plaintiff's disability. Its language only protects employers when the employee is *actually* unable to perform essential job duties even with reasonable accommodation. The statute does not protect employers that honestly *but mistakenly* believe the employee's disability renders him or her unable to perform essential job duties even with reasonable accommodation.

This statutory reality could discourage employers from reassigning employees who they honestly and reasonably believe, based on medical opinion, pose a danger to themselves or others. If such an employer did reassign the employee based on an honest and reasonable belief, the employer could nonetheless be subject to liability if a jury later concludes that belief was mistaken.

in impermissible discrimination. The legal test for establishing disability discrimination should reflect this reality.

Consequently, the complete standard in the disability context is that an employer discriminates in violation of section 12940, when (1) the employer knew or perceived plaintiff as having a physical condition that limited a major life activity, (2) the plaintiff's actual or perceived physical condition was a substantial motivating reason for the employer's action, and (3) the substantial motivating reason was something other than the fact that the physical condition actually rendered the plaintiff (a) unable to perform essential job duties whatsoever even with reasonable accommodation or (b) unable to perform essential job duties safely with reasonable accommodation.

Section 12940, subdivision (a)(1) is not ancillary. Rather, it is an important aspect of what constitutes disability discrimination under section 12940, and should be considered one of the three indispensable components of disability discrimination.


_____
Poochigian, J.

3