Filed 6/18/24  Flores v. County of Los Angeles CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

|  |  |
|---|---|
| CARLOS FLORES, | B325761 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV21913) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

Haney & Shah, Steven H. Haney and Kenneth W. Baisch for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Geoffrey S. Sheldon, David A. Urban, Megan K. Atkinson and Kelsey Ridenhour for Defendant and Respondent.

———————————————

Plaintiff and appellant Carlos Flores is a Battalion Chief working for the Los Angeles County Fire Department. He tested for promotion to the rank of Assistant Chief on four occasions; although he passed the test, he was not promoted. He also sought temporary placement as an Acting Assistant Chief, as was often done in the Department, but he was not given the temporary appointment for several years. He brought suit against the County of Los Angeles, alleging the failure to promote him constituted age, disability, and ethnicity discrimination within the meaning of the Fair Employment and Housing Act (Govt Code, §§ 12900 et seq., FEHA). The County obtained summary judgment and Flores appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Plaintiff's Employment

Flores was born April 17, 1958. He identifies as Latin American.[1] He worked his way up through the ranks of the

---

[1]     In Flores's opening brief, his counsel describes his ethnicity as "Hispanic American." After County stated that Flores 'identifies as 'Latin American' " in its respondent's brief, Flores's counsel's reply brief states that County's brief is "racist" for doing so, explaining that "while all of the papers in the case identify [Flores's] preference for the term 'Hispanic American,' [County] pointedly call[s] him 'Latin American,' an 'anglo' term referring to the European countries which spoke Latin-based languages, which conquered Central and South America." At Flores's deposition, he stated that he identified as Latin American; the fact that he "identifies as 'Latin American,' " was presented by County as an undisputed fact in connection with its summary judgment motion, and Flores agreed that it was, in fact, undisputed.

Department, and has served as Battalion Chief since 2003.[2]

Flores tested four times for promotion to Assistant Chief. Each time Flores attempted to promote to Assistant Chief, the Department posted an announcement for the position. Flores took a written exam with other candidates. Successful candidates from the exam were ranked in an "Eligible List"; their scores placed them in different "bands" (from 1 to 5, with 1 being best). All applicants in the same band were to be treated equally for promotion. Fire Chief Daryl Osby, who is African American, was the sole decisionmaker as to who would be promoted. Chief Osby testified that he was required to select from the top band with eligible candidates; however, if there were three or fewer candidates in a band, he could consider candidates in the next band.[3]

## 2. *The First Three Exams*

As the fourth test followed the filing of Flores's initial complaint in this action, we begin with the first three tests.

### A. *The 2013 Exam*

The following facts are undisputed with respect to the 2013 Exam: Flores placed in Band 4 on the Eligible List. Seven applicants were ultimately promoted. Each applicant who was promoted placed in a higher band than Flores.

---

[2] The top rank in the Department is Fire Chief. Below that, in order, are: Chief Deputy; Deputy Fire Chief; Assistant Fire Chief; Battalion Chief, Fire Captain, Firefighter Specialist; and Firefighter.

[3] Chief Osby's testimony on this point appears undisputed; however, it was not identified in either party's separate statement as a material fact.

3

## B. The 2016 Exam

The following facts are undisputed with respect to the 2016 Exam: Flores placed in Band 2 on the Eligible List. Five applicants were ultimately promoted. Three of the applicants who promoted were in the same band as Flores; two of them were in the band below him.[4] The two promoted from Band 3 were Jim Enriquez and Anderson Mackey, Jr. Enriquez identifies as Hispanic or Latin American; Mackey is African American.

Before Chief Osby made the promotions, he interviewed promotable candidates, including Flores. Flores had sustained a work-related knee injury on January 31, 2017. On February 10, 2017, when Flores interviewed with Chief Osby for the Assistant Chief position, he was wearing a knee brace and planning to have surgery.

Flores believed that Chief Osby chose not to promote him because of his temporary knee-related disability. In interrogatories, Flores explained that during the interview, Chief Osby "looked at the brace in dismay and asked Flores what had happened to his knee. Flores told him that he slipped and fell at the fire station carrying some equipment. Osby's facial reaction continued to be serious and he did not smile again at Flores at any time during the interview." In deposition, Flores testified that, after this explanation, Chief Osby said, "It must have hurt." Flores testified that Chief Osby had also asked him how long he would be off; Flores said he promised he would be back to duty as soon as possible.[5] Flores added that, at the end of the interview,

---

[4] No applicant placed in Band 1 in the 2016 exam.

[5] Ultimately, he would return to work nine months after his injury.

4

Chief Osby "looked at me and said, you know, 'Be careful walking out,' like I was some invalid."

Shortly thereafter, Chief Osby made his first set of promotions from the 2016 Eligible List, which included two individuals out of five from Band 2, and Enriquez from Band 3. In February 2018, Chief Osby made two additional promotions— another individual from Band 2, and Mackey from Band 3, leaving Flores and one other candidate in Band 2 unpromoted. Flores believes he was "skipp[ed]" in Band 2 because of the knee brace he wore at the interview.

C. *The 2018 Exam*

The following facts are undisputed with respect to the 2018 Exam: Flores placed in Band 5, the lowest band. Five applicants were ultimately promoted. Each applicant who was promoted placed in a higher band than Flores.

3. **Attempts to Be Appointed Acting Assistant Chief**

At around the same time Flores was seeking promotion to Assistant Chief, he was also seeking a temporary appointment to Acting Assistant Chief. He was not selected. Disappointed by his failure to obtain an appointment to Acting Assistant Chief, he pursued a union grievance. This was settled on January 5, 2021, with a Deputy Chief allegedly agreeing to forward Flores's request for "consideration" for the next available Acting Assistant Chief position. When another Acting Assistant Chief position became available, it did not go to Flores; instead, it was given to a younger, African American Battalion Chief.

4. **Flores Files Suit**

On May 18, 2021, Flores filed an administrative complaint with the Department of Fair Employment and Housing. He received an immediate right to sue notice. He filed his complaint in this action on June 11, 2021, alleging one cause of action for

discrimination under the FEHA (on the basis of age, disability/medical condition, and ethnicity) and a second cause of action for failure to prevent discrimination under the FEHA.

This was followed almost immediately by his first amended complaint; and, the following month, his second amended complaint.

### 5. *Flores is Appointed Acting Assistant Chief*

On July 16, 2021, Chief Osby appointed Flores to an Acting Assistant Fire Chief position.

### 6. *The 2021 Exam*

While this action was pending – and Flores was in the Acting Assistant Chief position – the Department held its 2021 exam for Assistant Chief. The following facts are undisputed with respect to the 2021 Exam: Flores placed in Band 3 on the Eligible List. Eight applicants were promoted by Chief Osby.[6] Four of the applicants who promoted were in higher bands than Flores; four of them were in Band 3 with him. The first set of seven promotions was made on November 16, 2021, and the eighth promotion was made on February 23, 2022.

### 7. *Operative Third Amended Complaint*

On March 7, 2022, Flores sought leave to file his third amended complaint, to add allegations of discrimination arising from the 2021 Exam. The motion was granted, and the third amended complaint became the operative pleading.

---

[6] In opposition to the summary judgment motion, Flores argued that, with respect to the 2021 Exam, Deputy Chief Anthony Marrone was the decisionmaker (while Chief Osby was off on medical leave). He does not pursue this argument on appeal, and instead concedes Chief Osby was the ultimate decisionmaker for all four exams.

In this complaint, Flores alleges five causes of action, each asserting a violation of the FEHA:  Age discrimination, disability discrimination, medical condition discrimination (which was virtually identical to disability discrimination), ethnicity discrimination, and failure to prevent discrimination.[7]

In summary, he alleged that, despite passing the Assistant Chief exam multiple times, he was not promoted.  Instead, the Department "has promoted younger, less experienced, and less qualified candidates."  He alleged similar practices with respect to the appointments to Acting Assistant Chief.

Flores made specific allegations as to evidence of discriminatory animus.  As to age, he alleged that, after the 2018 Eligible List expired (in 2021), he was told "by various high ranking managers in the Department including Deputy Chief Anthony Marrone, Chief Deputy David Richardson, and others, words to the effect of 'How much time do you have left' comment which obviously was made with reference to Flores being 63 years old."

As to disability, Flores alleged that, during his interview for promotion from the 2016 Eligible List, Chief Osby "reacted to Flores' knee brace with a tone suggesting Flores' disability/medical condition at the time was a disqualifying factor, which turned out to be exactly what happened."  He alleged he was "passed over in Band 2" because of his disability, in addition to his age and ethnicity.

As to ethnicity, he focused on the fact that, when he qualified in Band 2 on the 2016 Eligible List, Chief Osby passed

---

[7] Because the disability and medical condition causes of action are identical for all relevant purposes, further reference to "disability" discrimination encompass "medical condition" discrimination.

him over for promotion and instead elevated Enriquez and Mackey from Band 3. Flores specifically focused on Chief Osby's act of promoting Mackey over him, as Mackey is African American.

**8.** ***Flores is Removed from the Acting Assistant Chief Appointment***

In March and April 2022, while in the Acting Assistant Chief position, Flores received two Notices of Instruction, indicating concerns with his performance. On May 16, 2022, he was returned to his position as Battalion Chief. Chief Osby represented that Flores was removed as "a result of his poor performance"; Flores believes it was retaliatory for pursuing this lawsuit.

**9.** ***Flores Seeks Leave to File a Fourth Amended Complaint***

On June 15, 2022, one month after he was removed from the Acting Assistant Chief position, Flores sought leave to file a fourth amended complaint, alleging a cause of action for retaliation – based on the Notices of Instruction and return to his Battalion Chief position.

The motion would ultimately be heard on the same day as County's motion for summary judgment, and denied.

**10.** ***County's Motion for Summary Judgment***

Following discovery, County moved for summary judgment. First, it argued that the statute of limitations barred any claims as to the 2013 and 2016 failures to promote. Next, it argued that, as Flores's knee injury was confined to the year of 2017, Flores had no disability discrimination claim arising out of the 2013, 2018 or 2021 exams.

As to the substantive claims, County argued that Flores failed to establish a prima facie case of discrimination, as he had

8

insufficient evidence that any of the challenged decisions were the product of discrimination. In the alternative, County submitted the declaration of Chief Osby, setting forth his rationale for why he did not promote Flores. As this established a non-discriminatory reason for the challenged decisions, County then argued that Flores could not establish Chief Osby's reasons were pretextual and that he was actually discriminated against. Both arguments were basically the same – that Flores had no evidence of discrimination.

Before we discuss County's evidence that Flores had no evidence of discrimination (either for a prima facie case or in response to the non-discriminatory reason), we first set out Chief Osby's stated rationale for not promoting Flores. Chief Osby declared that he did not select Flores for promotion because, in his determination, Flores was not as qualified as those promoted over him, and his skill set did not meet what Chief Osby sought. He specifically stated that Flores did not present himself with confidence, which is necessary for leadership positions.[8] As to promoting Enriquez and Mackey from Band 3 over Flores in

---

[8] Flores subsequently submitted excerpts from Chief Osby's deposition, in which he set out his impressions of Flores's performance during the 2017 interview: "Vague on the positions that were available at that time. And compared to the other candidates interviewed, he didn't exude a high level of confidence that I felt as it pertains to his leadership and his ability to lead people. I can't say that I would use 'meek' as a word, but definitely his presence in the room as it pertained to his voice, his responses to questions, my ability from a perspective of an intangible, it just didn't give me confidence that he would lead to the capacity or the level that the other candidates exhibited in their interview."

2016, Chief Osby identified the particular skills and experience those two individuals had, which Chief Osby believed Flores lacked (for example, experience with brush fires), which were necessary for the specific Assistant Chief positions that were vacant.[9]

Turning to the argument that Flores lacked evidence of discriminatory animus, County addressed all three alleged types of discrimination. As to age discrimination, County argued that Flores's only purported evidence was a few purported comments made in unidentified situations, by individuals who were not Chief Osby – the actual decisionmaker. County argued that these comments are not sufficient to support the conclusion that Chief Osby's promotion decisions were made with age-related discriminatory animus.

As to disability discrimination, County argued that Chief Osby expressing concern about Flores's knee injury and having a serious expression did not amount to animus.

As to ethnicity discrimination, County noted that Flores's only purported evidence was that Chief Osby promoted Mackey from Band 3 over him (in Band 2) from the 2016 Eligible List. County argued that a single promotion could not evidence ethnicity discrimination and, in any event, from the very same

_____

[9]     Chief Osby added that, in 2021, he appointed Flores as Acting Assistant Chief "to give him an opportunity to demonstrate his abilities and also to improve upon leadership skills." Flores "performed poorly as Acting Assistant Fire Chief because he demonstrated poor communication skills" and was ultimately removed from the position. County saw this as confirmation that Chief Osby was correct in his decision not to promote Flores.

10

exam, Chief Osby *also* promoted Enriquez from Band 3, and Enriquez identified as Hispanic or Latin American.

Finally, County argued that the cause of action for failure to prevent discrimination fails when there was no actual discrimination.

11. ***Flores's Opposition***

In his opposition, Flores first addressed the statute of limitation argument by asserting the continuing violation doctrine. He agreed that he had no disability after he returned to work following surgery in late 2017, but argued he still had a cause of action for disability discrimination in connection with the 2018 and 2021 exams, on the basis of perceived disability. Flores argued that, since Chief Osby continued to believe he lacked command presence, Chief Osby must have perceived him to still have a disability that affected his performance.

Turning to the merits, Flores argued he had specific evidence of the three types of discrimination. As to age discrimination, Flores argued that most of the individuals Chief Osby promoted to the Assistant Chief position over the years were younger than he was. This fact is not surprising; Flores was consistently one of the oldest applicants for Assistant Chief. That said, there was no great disparity between Flores's age and that of the successful applicants over the years.[10]  Perhaps for this

---

[10]  For example, Flores stated that all of the promoted individuals from the 2018 Exam were younger than he was and none of the promoted individuals "were over 60 at the time of promotion." This is true, but only just. Flores was born in April 1958; he was only four months over 60 in August 2018, when the first set of promotions were made from the exam. Michael Inman was appointed Assistant Chief on October 16, 2019; he was the

reason, Flores does not argue the relative ages of the unsuccessful and successful candidates for Assistant Chief as evidence of age discrimination on appeal.

Instead, on appeal, Flores's evidence of age-related animus is limited to the age-related comments allegedly made by some Deputy Chiefs. In his operative complaint, he alleged the statements were made in 2021, after the 2018 Eligible List had expired. In response to interrogatories, however, he explained that these comments were made "[d]uring the years 2014-2019," when he "met face-to-face with each Deputy [Chief] for each [of] the three regions," in the context of the Deputy Chiefs making recommendations for the Assistant Chief promotions. But in his declaration in opposition to the motion for summary judgment, Flores changed the context of the conversations again – they no longer related to his attempts to promote to Assistant Chief, but his requests for consideration of appointment to Acting Assistant Chief. He stated, "In seeking to be appointed to Acting Assistant Chief, I have been repeatedly asked by various high-ranking managers in the Department including Deputy Chief (now Acting Fire Chief) Anthony Marrone, Chief Deputy David Richardson, and others, who were in my chain of command and therefore had input on my promotion, words to the effect of 'How much time do you have left,' what was my recruit class, or how long I had been a Battalion Chief, comments which obviously were made with reference to my being 63 years old and eligible for retirement. There was no reason for Chief Marrone or Chief Richardson to

last successful applicant from the 2018 cycle. He was born in April 1960, meaning he was 59 1/2 when appointed.

12

make these comments. We had not been discussing retirement plans or anything related to retirement."[11]

As for Flores's evidence of animus as to disability, it was limited to Chief Osby's purported reaction to his knee brace during the February 2017 interview. Flores stated in his declaration, "Osby reacted to my knee brace by staring at the brace throughout the interview and with a tone suggesting that my disability/medical condition at the time was a disqualifying factor, which turned out to be exactly what happened."

Flores's evidence of discriminatory animus as to ethnicity took two forms. First, Flores noted that Chief Osby was a former President of The Stentorians, an organization of African American firefighters in the City and County of Los Angeles. In 2000, when he was President, he approved a "Position Paper" on behalf of the Stentorians.[12] Flores argued that, in the Position Paper, Chief Osby cited "the need to promote more African Americans to management positions."

Second, Flores argued that, under Chief Osby, that is exactly what the Department has done. Flores obtained the

---

[11] Preliminarily, it appears that the reference to Flores being "63 years old" was a relic of earlier allegations that the conversations took place when the 2018 Eligible List expired in 2021. Although Flores does not set forth a date for these conversations in his declaration, his declaration indicates that he had sought appointment to Acting Assistant Chief as early as 2010, when he was only 52.

[12] Flores refers to the document as a "Manifesto" and asserts that Chief Osby was its author. Chief Osby denied that he had ever heard anyone refer to it as a "Manifesto." He also testified that he edited and approved the document, but was not its author.

services of an expert statistician, Dawn Porter, to analyze the data regarding promotions to Assistant Chief and appointments to Acting Assistant Chief. Porter's declaration stated that she was "provided a breakdown of ethnicity within the entire County Fire Department population," and goes on to represent that the Department is 28 percent Hispanic or Latin American.[13] Based on those numbers, she concluded Hispanic or Latin American firefighters were underrepresented in both promotions to Assistant Chief and appointments to Acting Assistant Chief, while African American firefighters were overrepresented in both categories.

**12.** *Omissions and Objections*

Before we turn to County's reply, we first take up two matters of greater significance: Omissions from Flores's evidence and objections to it.

As to omissions, Flores's expert, Porter, declared that her resume was attached as Exhibit 21, and a "dataset" regarding employees chosen as Acting Assistant Fire Chief was attached as Exhibit 22. But these were not, in fact, included in Flores's appendix of exhibits, which ended after Exhibit 20. Moreover, Exhibit 14 was excerpts from Chief Osby's deposition. Flores's opposition relied on two exhibits to that deposition – the Stentorians' Position Paper and a chart with the purported ethnic breakdown of Department personnel – but did not attach those exhibits.

County objected to nearly every paragraph in Flores's declaration on multiple grounds. We focus only on two key

---

[13] Porter does not indicate from where she obtained the breakdown of ethnicity within the Department. As we shall discuss, County challenged both its accuracy and its relevance.

14

paragraphs:  the one dealing with age-related animus and the second with disability animus.  As to age discrimination, Flores had stated that at some time, "various high-ranking managers," including Deputy Chief Marrone and Chief Deputy Richardson "and others" said "words to the effect of 'How much time do you have left'," what was his recruit class or how long had he been a Battalion Chief, which comments "obviously were made" with reference to his eligibility for retirement.  County objected to this paragraph as hearsay, vague and ambiguous, lacking foundation, and speculation.

As to disability discrimination, Flores had stated that, during his February 2017 interview with Chief Osby, the Chief "reacted to my knee brace by staring at the brace throughout the interview and with a tone suggesting that my disability/medical condition at the time was a disqualifying factor, which turned out to be exactly what happened."  County objected to this paragraph as speculation, lacking foundation and personal knowledge, and improper opinion testimony.

County objected to Porter's declaration in its entirety.[14] Objections included:  she relied on a dataset that was not provided as an exhibit to the summary judgment opposition; she relied on a breakdown of ethnicity of Department personnel that was also not provided with the summary judgment opposition; and, in any event, her conclusions were irrelevant and immaterial.  County argued that the relevant comparison pool (for promotions to Assistant Chief) is not the entire Department,

---

[14]    County objected to the paragraph stating that Porter's resume was attached on the basis that the resume was not, in fact, attached.  The court would ultimately overrule that objection, although Porter's resume was never provided.

but, instead, only those who applied for the position and passed the exam.

**13.** *County's Reply*

Armed with its objections and the omissions from Flores's opposition, County again emphasized that there was no evidence of discriminatory animus.

As to age discrimination, County argued that Flores's only evidence of purportedly ageist statements being made was his own declaration – which failed to identify what was said, by whom, when, and where. With no foundation for the statements, he had not established they were admissible. In any event, the statements alone constitute insufficient evidence of age-related animus.

As to disability discrimination, County argued plaintiff had only his speculative belief that he was passed over because of his knee brace, but no actual evidence that this was so.

Finally, as to ethnicity discrimination, County argued that Flores literally had no evidence – he lacked the Position Paper on which he relied to demonstrate Chief Osby's racial bias, and his statistician's calculations were based on a dataset that was also not included in his evidentiary submissions to the court. County further argued that the relevant comparison would be to compare the ethnic breakdown of successful applicants on the exam for Assistant Chief with the ethnic breakdown of those promoted. It did that calculation and demonstrated that – while there was not perfect proportionality – the disparity was not significant enough to demonstrate disparate treatment.

**14.** *Flores Attempts to Amend His Opposition Papers*

One week after County filed its reply, and four days before the scheduled summary judgment hearing, Flores filed "amended" opposition papers. The purpose of this amended filing

was to add the two exhibits to Chief Osby's deposition mistakenly omitted from its earlier filing – the Stentorians' 2000 Position Paper and the chart purportedly setting forth the ethnic breakdown of Department Personnel.  Significantly, Flores made no attempt to add omitted Exhibit 22 – the dataset on which Porter had relied for her statistical analysis regarding appointments to Acting Assistant Chief.

County objected to this filing and reasserted its objection at the hearing.  The trial court does not appear to have ruled on this objection.

## 15. *Ruling, Judgment and Appeal*

The court sustained nearly all of County's objections to Flores's and Porter's declarations.  The court assumed that Flores established a prima facie case and, based on Chief Osby's declaration, found that County met its burden of establishing a nondiscriminatory reason for the decision not to promote Flores.  The burden therefore shifted to Flores to raise a triable issue of discriminatory animus.  The court concluded that Flores had not done so.

The court granted summary judgment.  Judgment was entered for County.  Flores filed a timely notice of appeal.[15]

---

[15]    On appeal, several pages of Flores's appellant's opening brief do not contain citations to the record, but instead cite to "PSAMF" – which was Plaintiff's Separate Statement of Additional Material Facts, submitted in opposition to the motion for summary judgment.  County's respondent's brief correctly points out that this is improper.  (Cal. Rules of Court, rule 8.204(a)(1)(C) [briefs must support each reference to a matter in the record by a citation to the volume and page number of the record where it appears].)  The issue runs somewhat deeper than a failure to appropriately cite the record.  It appears that, for some nine pages of argument (comprising Flores's argument that

## DISCUSSION

### 1. *Standard of Review*

" 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' [Citation.] The pleadings define the issues to be considered on a motion for summary judgment. [Citation.] As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact." (*Ferrari v. Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252.)

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579.)

We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the

---

triable issues of fact exist as to disability and ethnicity discrimination), Flores has simply copied wholesale from his opposition to County's motion for summary judgment. While there is no rule violation in copying one's trial court papers into the appellate brief, by citing only to his Separate Statement of Additional Material Facts, Flores simply bypasses all of County's "disputes" of those facts, and objections to the evidence purportedly supporting them.

trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

In 2010, our Supreme Court declined to address the standard of review of evidentiary objections based on papers alone in summary judgment proceedings. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535.) Here, relying on *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451, Flores argues for de novo review. This is the minority view; we align with the majority of courts and apply abuse of discretion review. (*LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946 & fn. 3 [collecting cases].) To the extent *Pipitone* further suggests we must reconsider the trial court's rulings on evidentiary objections when the appellant does not directly challenge those rulings on appeal (see *Pipitone, supra,* 244 Cal.App.4th at pp. 1451-1452), we again disagree. "Like any other claim of error, [the appellant] is required to support evidentiary issues on appeal with argument and authority as to why, under the proper standard of review, the court erred. [The appellant] must also explain how the error was prejudicial." (*Martin v. Board of Trustees of California State University* (2023) 97 Cal.App.5th 149, 173.)

**2.    *Shifting Burden in Employment Discrimination Cases***

"California resolves employment discrimination claims by applying a burden-shifting procedure. Under this test, the plaintiff bears the initial burden of proving a prima facie case of discrimination by presenting evidence showing: (1) he was a member of a protected class, (2) he was qualified for the position sought or was performing competently in the position held, (3) he suffered an adverse employment action, and (4) some other

19

circumstance suggests a discriminatory motive.  [Citation.]  [¶] Once the employee sets forth a prima facie case, the burden shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  [Citation.]  If the employer does so, the burden then shifts back to the employee to 'offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' " (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1007.)

"An employer may meet its initial burden in moving for summary judgment by presenting evidence that one or more elements of a prima facie case are lacking, or the employer acted for a legitimate, nondiscriminatory reason." (*Martin, supra,* 97 Cal.App.5th at p. 162.)

### 3. *Flores Has Insufficient Evidence to Support a Prima Facie Case*

#### A. *Age Discrimination*

Flores's only evidence of age-related animus is the paragraph of his declaration – to which objections were sustained – stating that certain individuals made comments which he interpreted as suggesting he should retire.  On appeal, his argument that the trial court erred in sustaining County's objections to his declaration is limited to setting forth the bulk of the declaration and arguing its relevance; he makes no argument that the court erred in sustaining the objections to this paragraph in particular.  As such, we consider his challenges to the court's ruling on the objections forfeited. (*Martin, supra,* 97 Cal.App.5th at pp. 173-174.)

20

Even if we chose to sua sponte address the objections, Flores would fare little better. We quote the paragraph again: "In seeking to be appointed to Acting Assistant Chief, I have been repeatedly asked by various high-ranking managers in the Department including Deputy Chief (now Acting Fire Chief) Anthony Marrone, Chief Deputy David Richardson, and others, who were in my chain of command and therefore had input on my promotion, words to the effect of 'How much time do you have left,' what was my recruit class, or how long I had been a Battalion Chief, comments which obviously were made with reference to my being 63 years old and eligible for retirement. There was no reason for Chief Marrone or Chief Richardson to make these comments. We had not been discussing retirement plans or anything related to retirement." County's vagueness objection was properly sustained. Flores claims that he sought appointment to Acting Assistant Chief from 2010 onward, yet fails to identify even the year of these statements. He claims they were made by Deputy Chief Marrone, Chief Deputy Richardson "and others," which, again, is impermissibly vague. He concedes that he is not providing a direct quote, saying only that the men said, "words to the effect of" sample questions he sets forth. Finally, Flores's inferences that the comments "obviously were made with reference" to his age and that there "was no reason" for the comments to be made are speculative, and the court did not abuse its discretion in sustaining the objections on these bases.[16]

---

[16] At most, the admissible part of the paragraph is that, at some point during the *eleven years* Flores sought appointment to Acting Assistant Chief, Deputy Chief Marrone and Chief Deputy Richardson asked him how much time he had left, the year of his recruit class, or how long he had been a Battalion Chief, with no

B.  *Disability Discrimination*

Flores's disability existed for nine months in 2017, during which time he was allegedly passed over for promotion from the 2016 Exam.  It is undisputed that he learned he was not selected for promotion from the 2016 Exam on March 1, 2018, when the County announced the next exam.  He did not file an administrative complaint with the Department of Fair Employment and Housing until May 18, 2021.  The FEHA statute of limitations requires a complaint to be brought within three years of the allegedly unlawful practice.  (Govt. Code, § 12960, subd. (e)(5).)  In 2018, at the time Flores learned he would not be promoted from the 2016 Exam, the limitations period was only one year.  (Gov. Code, fmr. § 12960, subd. (d).)  Under either measure, Flores's administrative complaint was untimely.

indication of context, his reply or any further comment they might have made.  Particularly given the absence of evidence that these individuals were materially involved in decisionmaking for Acting Assistant Chief appointments, these statements are inadequate to demonstrate discriminatory animus as a matter of law.  (*Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 427-428.)  Moreover, the record contains data on appointments to Acting Assistant Chief – specifically 53 people who account for a total of 61 individual appointments.  Of those 61 appointments, only 1 was under age 45, and 12 more were under age 50.  The vast bulk – 46 appointments – were between 50 and 60.  (Two, including Flores, were over 60.)  Flores initially sought the appointment in 2010, when he was approximately 52, squarely within the range of appointees over the years.

In opposition to the summary judgment motion,[17] Flores argued that the statute of limitations did not apply because of the continuing violation doctrine. That doctrine allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct occurring within it. (*Birschtein v. New United Motor Mfg., Inc.* (2001) 92 Cal.App.4th 994, 1003.)

While Flores argued that the discriminatory failure to promote him occurred throughout the four exams, arguably bringing him within the scope of the continuing violation doctrine, this cannot be the case with respect to his disability discrimination cause of action. Flores had no disability after 2017. He speculates that Chief Osby must have still perceived him to be disabled simply on the basis that Chief Osby continued to not promote him – circular reasoning at best. There is simply no evidence of continued disability discrimination following the 2017 failure to promote, rendering the continuing violation doctrine inapplicable and the cause of action time-barred.

If we were to consider the claim on the merits, Flores still would not prevail. In the usual disability discrimination case, there is no issue of discriminatory animus, rather, the focus is on whether the plaintiff could perform the essential job functions, whether there was a reasonable accommodation that would have enabled the employee to do so, and whether such an accommodation would have imposed an undue burden on the employer. (*Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 123.) That is not at issue here; Flores

---

[17]  Flores does not mention the statute of limitations at all on appeal. Neither does County. The trial court's written order, however, indicates that it adopted County's position on the issue.

23

simply assumes he could have done the job, and County does not argue otherwise. Instead, Flores argues that Chief Osby exhibited discriminatory animus by his behavior during the interview.

As with the paragraph of Flores's declaration that pertains to age bias, the paragraph of his declaration setting forth his evidence of discriminatory animus as to disability was subject to a number of sustained objections which Flores does not challenge on appeal, thus waiving the argument they were incorrectly sustained. And if we were to consider the objections, we would conclude they were properly sustained, at least in part. Certainly, Flores's statement that Chief Osby's "tone suggest[e]d that [Flores's] disability medical condition at the time was a disqualifying factor, which turned out to be exactly what happened," was speculative, as was his statement that he passed over "to promote a less qualified candidate." At most, Flores admissibly testified that Chief Osby stopped smiling, stared at his brace, and (as he testified at deposition) told him to be careful when walking out. A change in facial expression and an expression of concern are not evidence of discriminatory animus.[18]

_____

[18] In his reply brief, Flores cites to *Birschstein, supra,* 92 Cal.App.4th at page 1002, for the proposition that "[t]hreatening stares can be sufficient to give rise to a triable issue of fact regarding intent." In *Birschstein*, after the female plaintiff repeatedly rejected her male coworker's advances, he then approached her to tell her he was having fantasies about her. After she complained to her foreman, her coworker never spoke to her again, but began a campaign of staring at her. Multiple times per day, when his work required him to go near her workstation, he would park his forklift and just sit, staring at her. She would wave him to go away, but he would not. (*Id.* at

C.    *Ethnicity Discrimination*

Flores's prima facie case of ethnicity discrimination was based on the statistical evidence set forth in the declaration of his expert, Porter, and Chief Osby's purported statement of intent to increase African American promotions set forth in the Stentorians' Position Paper.

The County successfully objected to much of Porter's declaration, on the basis that it did not include the evidence on which it was based and compared the data to that of an irrelevant population.  On appeal, Flores argues that Porter did, in fact, rely on data provided by County in discovery.  He does not address the argument that the comparison was irrelevant.

"A properly qualified expert may offer an opinion relating to a subject that is beyond common experience, if that expert's opinion will assist the trier of fact.  [Citation.]  Even so, the expert opinion may not be based on assumptions of fact that are without evidentiary support or based on factors that are speculative or conjectural, for then the opinion has no evidentiary value and does not assist the trier of fact." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510.)

---

pp. 997-999.)  She reported this, but her employer took no action.  When she brought suit, her employer obtained summary judgment on the basis that the coworker's actions did not rise to the level of actionable sexual harassment.  (*Id.* at p. 999.)  The Court of Appeal reversed, concluding that, particularly in view of his prior conduct, the court could not say that repeated acts of staring cannot qualify as actionable sexual harassment as a matter of law.  (*Id.* at p. 1001.)   The suggestion that Chief Osby allegedly staring at Flores's knee brace and telling him to be careful walking out is an any way comparable to the facts of *Birschstein* is baseless.

25

Porter compared the percentage of those appointed Acting Assistant Chief who were Hispanic or Latin American (taken from Exhibit 22) with the percentage of Department Personnel who were Hispanic or Latin American (from an unidentified source with which she was "provided").  She performed a similar analysis comparing the ethnic makeup of those promoted to Assistant Chief (taken from data admittedly provided by County) again to the overall ethnic breakdown of the Department.

As to Porter's first comparison (Acting Assistant Chief appointments), Exhibit 22 was never provided to the trial court, even when Flores submitted his amended opposition documents.  Porter claimed Exhibit 22 was a copy of "a dataset that included [certain] information about 41 employees chosen as the County Fire Department's Acting Assistant Fire Chief."  Such a document is nowhere in our appellate record, and was never before the trial court.  Indeed, Flores submitted County's response to a special interrogatory asking for the "age, race, ethnicity and level of education" of each person appointed Acting Assistant Chief over the last ten years; County responded with a chart.  But this is not the same information.  County's chart contains 53 individuals (who accounted for a total of 61 appointments) – not 41, as in Porter's dataset.

Porter used as a comparison the ethnic breakdown of the Department. She does not indicate from where she obtained those numbers, but it appears from Flores's separate statement that Flores is relying on a chart that was Exhibit 2 to Chief Osby's deposition.  But the chart was never authenticated; nor were the numbers in it accepted as correct by County.[19]  Thus, Porter's

[19]     At Chief Osby's deposition, he was shown the chart, which had apparently been published (in an unknown publication)

26

calculations of ethnic disparity in appointments to Acting Assistant Chief are based on numbers that are without evidentiary support, and are therefore inadmissible.

Porter's second calculation (Assistant Chief Promotions) is on slightly more solid ground, as the source of her data regarding the individuals promoted is properly identified as a declaration from County containing this information. However, her comparison data – the breakdown of Department personnel by ethnicity – is again unsupported. Thus, this conclusion is inadmissible as well.

Moreover, even if Porter's calculations were performed on data in evidence, County is correct that she performed legally irrelevant comparisons. "In evaluating the impact of a particular process, we must compare the group that 'enters' the process with the group that emerges from it." (*Paige v. California* (9th Cir. 2002) 291 F.3d 1141, 1145.) Ordinarily, when challenging disparity in a promotion process, we should determine whether the group that received promotion looks statistically different

alongside an interview he did in 2020. When asked if he had seen the chart before, Chief Osby answered, "In this format, no." The chart indicated that 6.19 percent of Department's personnel were African American. When asked if he had any reason to believe this was an inaccurate number, County's attorney interposed a foundation objection, and Chief Osby answered "No." Chief Osby also testified that he does not know the percentage of firefighters employed by the Department who are African American. Chief Osby's failure to dispute the accuracy of the number, given his admission that he does not know the actual number, is not evidence that the number is correct. When Flores asserted in his separate statement that the percentage of African American personnel in the Department in 2019 was 6.19 percent, County disputed both the proposed fact and its relevance.

from the group that applied for it. (*Ibid.*) Thus, when considering those appointed to Acting Assistant Chief, what is relevant is not the ethnic breakdown of all Department personnel, but the ethnic breakdown of those eligible for such an appointment – the Battalion Chiefs. When considering those promoted to Assistant Chief, what is relevant is not the ethnic breakdown of the entire Department, but only those who successfully passed the exam for Assistant Chief.[20] Porter simply

---

[20] If we accept Chief Osby's testimony that he cannot reach a lower band until there are three or fewer appointees left in the higher bands, the proper comparison set is even smaller. To take a concrete example, in 2013, 12 individuals took the exam, 3 of them were Hispanic or Latin American, and only 1 Hispanic or Latin American candidate was included in the 7 promoted. This results in the conclusion that Hispanic or Latin American candidates made up 25 percent (3 in 12) of the successful candidates, but only 14 percent (1 in 7) of the promotions. But two of the Hispanic or Latin American candidates placed in Band 4, and Band 3 was the lowest band reached for consideration for promotion. If one considers only the candidates in Band 3 or higher as "successful" and eligible for promotion, Hispanic or Latin American candidates comprised only 10 percent of this group (1 in 10), yet still accounted for 14 percent of the promotions. A similar result applies in 2018, when there were 19 candidates on the eligible list, 3 of whom were Hispanic or Latin American, but 2 of them were in Bands 4 and 5, which were not reached. Considering everyone on the eligible list, Hispanic or Latin American candidates accounted for 16 percent of the pool and 20 percent of the promotions. But if we look only at the bands that were reached, Hispanic or Latin American candidates were only 11 percent of the eligible candidates, yet still accounted for 20 percent of the promotions. Putting it yet another way: our review of the data indicates that, in all four exams, the *only* times a Hispanic or Latin American candidate was in a reachable band

did not do this calculation.  As Porter's opinion was based on an irrelevant comparison, the court did not abuse its discretion in sustaining objections to her opinions.

Flores is left, then, with the Stentorians' Position Paper as his sole evidence of ethnic animus.[21]  There are two problems with Flores's reliance on this document.  First, it does not say what he says it does.  Flores argues that Position Paper cites "the need to promote more African-Americans to management positions."  Yet he points to nothing in the document that says this.[22]  Instead, the document notes then-existing concerns including, "[p]rotecting and defending a promotional system and process that adversely effects African American employees" and "[f]ailure to ensure that training, assignments and other job exposure designed for personnel development is made uniformly available to all employees."

Second, the Position Paper expressed the concerns of the Stentorians in 2000, long before Osby was Chief, and more than a decade before he made the promotion decisions at issue here. There is no evidence, beyond the Position Paper and Chief Osby's testimony surrounding its creation, regarding the promotional

---

and was not promoted, that candidate was Flores (in 2016 and 2021).

[21]     Preliminarily, if the trial court had sustained County's objection to the late submission of this exhibit, we would uphold it as within the court's discretion.  Flores waited until one week after County had pointed out the omission to correct it.

[22]     Likewise without support in the record is Flores's assertion that Chief Osby "made it his stated goal to promote as many African American firefighters to senior management as possible, over more qualified firefighters such as Flores who is Hispanic."

29

practices of the Department in 2000. Chief Osby testified that the goal of the Stentorians at the time was simply "to have fair and equitable processes for promotions within the Los Angeles County Fire Department, including members of our organization." He testified that he believes the processes now are fair and equitable. The Stentorians' Position Paper related to a system that is no longer in effect; whether Chief Osby believed 24 years ago that the system was unfair to African Americans is simply irrelevant to his actions under the present system.

Flores has no evidence establishing animus based on ethnicity. He has failed to establish a prima facie case, and this cause of action also fails.

D. *Failure to Prevent Discrimination*

As Flores could not proceed on any of his FEHA discrimination causes of action, he also could not proceed on failure to prevent discrimination. (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021.)

E. *The Issue of the Fourth Amended Complaint is Moot*

On appeal, Flores also argues the trial court erred in denying him leave to file his fourth amended complaint, which sought to add a retaliation cause of action. County has submitted a request for judicial notice, which we now grant, demonstrating that Flores is pursuing his retaliation cause of action in a separate complaint he has filed, rendering the issue of leave to amend moot. Flores suggests that if we reverse on the summary judgment, he should be permitted to pursue all of his causes of action together in the same action. As we affirm the summary judgment, it makes no difference that he is pursuing retaliation in a different action.

30

## *DISPOSITION*

The judgment is affirmed.  Each party is to bear its own costs.

LEE, J.*

WE CONCUR:

MOOR, Acting P. J.

KIM, J.

---

* Judge of the San Bernardino County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

31