Filed 12/23/25  Sugerman v. L.A. Unified School District CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BONNIE SUGERMAN, | B342963 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCV02152) |
| v. | |
| LOS ANGELES UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rolf Treu, Judge.  Affirmed.

Irving Meyer for Plaintiff and Appellant.

Jackson Lewis PC, Henry L. Sanchez and Dylan B. Carp for Defendant and Respondent.

_____

After her request for a full-time remote position was denied, plaintiff and appellant Bonnie Sugerman (Sugerman) sued her former employer, defendant and respondent Los Angeles Unified School District (the District), asserting multiple claims of alleged disability discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.).[1]  The trial court granted summary judgment for the District on all of Sugerman's claims.  Our de novo review confirms the trial court's assessment of the evidence, and we affirm the judgment.

## BACKGROUND

### I.    Sugerman's Employment

Sugerman began working for the District as a senior office technician in 2002.  In 2020, she was working at Mark Twain Middle School (Mark Twain).

Between May 2020 and January 2021, during the height of the COVID-19 pandemic, Sugerman was granted a leave of absence following open heart surgery.  When she returned to work, Sugerman was granted accommodations that included permission to work four hours onsite and four hours remotely, and a restriction against lifting anything over 10 pounds.  These accommodations were tailored to the restrictions listed in the doctor's note supporting her request.

In August 2021, Sugerman was informed that she would need to return to Mark Twain's campus for the 2021-2022 school year; it was anticipated that demands on the school staff would increase as students returned to campus.  Instead, at her request,

---

[1]    All further statutory references are to the Government Code unless otherwise indicated.

2

Sugerman was reassigned to a remote position at the District's City of Angels Virtual Academy school (City of Angels).

## II. Sugerman Unsuccessfully Applies for a Remote Work Accommodation for the 2022-2023 School Year

In March 2022, the District advised Sugerman that City of Angels would close permanently. Six new Thematic Virtual Academy schools (the Virtual Academies) would offer reduced online services for the 2022-2023 school year.[2] There were 18 total senior office technician positions available at the Virtual Academies. Six of those positions would be remote, for employees in need of religious or disability accommodations.[3] There were no other vacant remote positions for senior office technicians. To maintain a remote position, an employee with a disability was required to email the disability management team "a statement of the requested accommodation along with supporting documentation from [he]r medical provider[.]"

On April 21, 2022, Sugerman emailed the disability management team with her request for a continued remote work accommodation. She submitted notes from Dr. David J. Wallenstein (the Wallenstein note) and Dr. Ellen Rochman Kovacs (the Kovacs note). The Wallenstein note explained that Sugerman "has multiple medical conditions placing her at high risk for severe complications, including death, from COVID-19 infection. As such, please give consideration to allowing [her] to continue work remotely from home." The Kovacs note recommended that Sugerman continue working remotely "so that

---

[2]     Between 2021 and 2022, enrollment in virtual school services dropped from approximately 16,300 to 6,200.

[3]     Nine employees ultimately applied for the six remote positions.

she [would] not experience intense anxiety" associated with working at a school site.

In May 2022, Sugerman emailed a coworker to say she was watching news coverage of an elementary school shooting. Sugerman said that she "really hope[s] we all get to continue working from home because . . . I am not going to go back into a school, ever, to work again. I am hoping that I will get to work at . . . [the] Virtual Academies from home until I can retire in November. How scary these shootings (anywhere) are[.]"

On June 15, 2022, the District advised Sugerman that she would be assigned to Paul Revere Charter Middle School (Paul Revere) for the 2022-2023 school year. On June 23, Sugerman's union representative contacted the disability management team to find out why Sugerman had not received her requested accommodation at the Virtual Academies. The team said that they had not received Sugerman's email.

On June 30, 2022, Raul Noe (Noe) informed Sugerman that no remote work positions were available. All six remote senior office technician positions were filled as of June 24, 2022. Noe instead instructed Sugerman to request an accommodation from Paul Revere's principal, who informed her that the school would "require[] [her] to be on campus to handle the receipt, filing and sending of student records."[4]

On July 21, 2022, Sugerman reapplied for a remote work accommodation. She resubmitted the Wallenstein and Kovacs notes along with a new note from Dr. Fernando J. Avila-Garibay, which reiterated verbatim the Wallenstein note as quoted above.

---

[4] This is consistent with the District's definition of the senior office technician position; per a declarant from its Human Resources department, "[s]eventy-five percent of the [position's] essential functions involve . . . [o]n-site presence."

Sugerman also submitted a form explaining that she "would not be able to lift heavy cumulative records" and that she doesn't "feel safe working in-person" or "being around too many individuals because of C[OVID-]19 (and the chance of . . . catching it)."

On July 27, 2022, Noe notified Sugerman that her doctor's notes "d[id] not have any work limitations[,]" and advised her to "provide additional medical documentation that address[es] what you are unable to do at work, which is usually written as work restrictions [or] work limitations that support[] your requested accommodation[]."

On July 29, 2022, Sugerman emailed the disability management team and Noe, adding the new explanation that she "really need[ed] to work at home/remotely . . . . [because] [t]he Position at Paul Revere will require me to stoop into file cabinets and work with the cumulative records.  It really does hinder my arthritis, etc."  Sugerman submitted another note from Dr. Pinting Chen stating that she "has multiple medical conditions (including cardiac abnormalities requiring daily medication use, a history of open heart surgery, diabetes) placing her at high risk for severe complications, including death, from COVID-19 infection.  [She] also has a history of bilateral knee osteoarthritis . . . [which] significantly impacts her mobility and ability to stoop and lift at work.  As such, please give consideration to allowing [her] to continue work remotely from home."

On August 4, 2022, Sugerman submitted a letter to the Educational Equity Compliance Office (EECO) purportedly appealing the District's decision to deny her a remote position.[5] Sugerman said that she "plann[ed] to retire from [the District]

---

[5]    From the evidence on appeal, it does not appear that the District had yet reached a final decision on Sugerman's request.

5

. . . at the beginning of the calendar year 2023. I am simply trying to retire[] . . . and am requesting to continue my remote assignment until [then]."

On September 22, 2022, Noe informed Sugerman that no action would be taken on her request until she provided additional documentation "describ[ing] the nature, severity, and duration of [her] impairment, the activity or activities that the impairment limits, [and] the extent to which the impairment limits the employee's ability to perform the activity or activities[.]"

Nevertheless, Noe soon offered Sugerman alternative accommodations. On September 29, 2022, Paul Revere notified Noe that Sugerman could access filing cabinets by either standing or sitting in a chair, eliminating any need for her to "stoop and lift." Paul Revere also told Noe that Sugerman "would be working from a cubicle in [an] almost isolated office" and provided "hand sanitizers and personal protective equipment" to minimize her exposure to COVID-19. Sugerman did not respond to this offer.

## III. Sugerman Obtains a Leave of Absence and Retires

On October 6, 2022, Sugerman requested a medical leave of absence (retroactive to July 20, 2022, the date of her assignment to Paul Revere) through January 21, 2023. The District approved her request the same day.

On October 12, 2022, Sugerman tendered her request to retire effective January 3, 2023.

## IV. Complaint

On January 31, 2023, Sugerman sued the District. Her complaint alleged five causes of action, all for violations of FEHA: (1) failure to accommodate Sugerman's disability; (2) failure to engage in an interactive process regarding reasonable

6

accommodations; (3) disability and/or age discrimination; (4) retaliation; and (5) harassment.

Sugerman alleged that the District "refused to allow [her] to work in a virtual position even though there were virtual positions available" and "refused to enter into a reasonable and good faith interactive process" to explore reasonable accommodations. As a result, Sugerman was "forced to resign from her job." Sugerman also claimed that because she sought an accommodation, the District unlawfully harassed and retaliated against her by failing to accommodate her or engage in an interactive process, compelling her retirement.

## IV. Motion for Summary Judgment

### A. *Motion*

On April 24, 2024, the District moved for summary judgment on all of Sugerman's claims, arguing, as relevant here, that Sugerman (1) caused the accommodation process to break down by ignoring the District's initial offer, taking medical leave, and retiring; (2) could not show that she had been subjected to an adverse employment action as required by her discrimination and retaliation claims; and (3) failed to allege that anyone from the District harassed her. In support, the District submitted, inter alia, records from Sugerman's employment, including correspondence between the District and Sugerman about her remote work request; Sugerman's letter to the EECO; and employee and officer declarations describing the accommodations process.

### B. *Opposition*

Sugerman opposed the motion for summary judgment. As relevant here, Sugerman alleged the interactive process broke down because of the District's repeated refusals to accommodate her. She also maintained that she could prove prima facie cases for discrimination, retaliation, and harassment. Sugerman

7

supported her opposition with, inter alia, her own declaration; internal emails describing the availability of remote senior office technician positions; and the declaration of Cynthia Marshal (Marshal), "an expert witness on matters of disability accommodation in a public employment setting."

## C. *Ruling and Appeal*

On October 18, 2024, the trial court granted the District's motion for summary judgment.

The trial court first sustained the District's objections to all of Marshal's testimony about the case, as well as Sugerman's own testimony about a conversation she had with Loretta Cervantes, a human resources officer, about the District's attitude towards remote work accommodations. [6]

The trial court found that the District "satisfied its . . . burden" to show that Sugerman "was the cause of the breakdown of the interactive process and she did not participate in good faith[,]" citing Sugerman's repeated failures to "present [the District] with medical notes that clarified and specified her medical restrictions" and her preexisting "intention to retire in early 2023[.]" Sugerman thus "failed to prove a triable issue of material fact" as to her accommodation and interactive process claims.

The trial court also ruled that neither the District's failure to accommodate Sugerman nor her voluntary retirement were adverse employment actions under FEHA. Thus, the District

---

[6] In her reply brief, Sugerman briefly argues that the trial court's evidentiary rulings "should not [be] affirm[ed.]" Sugerman forfeited these arguments by failing to raise them in her opening brief. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 (*United Grand Corp.*).)

8

demonstrated that Sugerman "[wa]s unable to establish . . . prima facie claim[s] for discrimination" and retaliation.

Lastly, the trial court found that Sugerman failed to identify any harassing conduct, dooming her harassment claim.

Sugerman timely appealed.

## DISCUSSION

### I.   Forfeiture

As a preliminary matter, the District argues that Sugerman's appeal should be deemed forfeited because her briefs do not comply with basic rules of appellate practice. (Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate briefing must "[s]tate each point under a separate heading or subheading, . . . and support each point by argument and, if possible, by citation of authority"]; see also *United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 146 ["'[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record'"].)

Sugerman's briefs are difficult to follow, but "we exercise our discretion to consider those issues we can discern . . . . [However,] there are times when it is simply not possible for us to understand what [she] is arguing. Any arguments not discussed in this opinion are deemed forfeited." (*United Grand Corp.*, *supra*, 36 Cal.App.5th at p. 153.)

### II.   Summary Judgment Standards

Summary judgment is proper when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law.[7] (Code Civ. Proc., § 437c, subd. (c).)

---

[7]     A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary

The moving party demonstrates such entitlement by showing that "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2).)

"On appeal after a [defendant's] motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "[W]e must view the evidence in a light favorable to . . . the [plaintiff], . . . liberally construing her evidentiary submission while strictly scrutinizing [the] defendant[']s own showing, and resolving any evidentiary doubts or ambiguities in [the] plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

## III. Application

On appeal, Sugerman fails to establish any error by the trial court. We therefore affirm the order granting summary adjudication in the District's favor on each of her five claims.

### A. *Accommodation and Interactive Process Claims*

#### 1. *Relevant legal principles*

Under FEHA, an employer must offer a reasonable accommodation for an employee's known disability or medical condition. (§ 12940, subd. (m)(1).) "''Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. [Citation.] Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to

_____

judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 856.)

10

participate in good faith.' "'[8] (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 738 (*Doe*).)

"[A]ssuming [an] employee is disabled, [her] employer cannot prevail on summary judgment on a claim of failure to reasonably accommodate unless it establishes through undisputed facts that (1) reasonable accommodation was offered and refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263 (*Jensen*).) When the employee is responsible for a breakdown of the interactive process, the employer is entitled to summary judgment on a separate claim for failure to engage in the interactive process. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 985 [on a motion for summary judgment, " 'the trial court's ultimate obligation is to " 'isolate the cause of the breakdown [in the interactive process] . . . and then assign responsibility' " so that '[l]iability . . . ensues only where the employer bears responsibility for the breakdown' "].)

---

[8] While the interactive process is inextricably intertwined with making reasonable accommodations, "an employer's failure to properly engage in the process is separate from the failure to reasonably accommodate an employee's disability[,] and gives rise to an independent cause of action." (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 347.)

2.     *Analysis*

The District met its burden to show that Sugerman was responsible for the breakdown of the interactive process. The District "did everything in its power to find a reasonable accommodation" for Sugerman (*Jensen*, *supra*, 85 Cal.App.4th at p. 263); indeed, by granting Sugerman's request for medical leave, the District ultimately fulfilled her goal of avoiding onsite work until her planned retirement "at the beginning of the calendar year 2023."

Prior to granting Sugerman medical leave, the District repeatedly solicited the necessary details about the medical limitations supporting Sugerman's request for remote work. Sugerman responded with successive doctor's notes asking the District to "consider" giving Sugerman a remote position, but failing to identify restrictions requiring that specific accommodation. (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 443 (*King*) ["It is [the] employee's responsibility to understand . . . her own physical or mental condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee"].)

Nevertheless, the District offered an alternate accommodation responsive to Sugerman's difficulty "stoop[ing] and lift[ing]" due to osteoarthritic knees and increased susceptibility to complications from COVID-19. Specifically, she was offered modified work arrangements so she could move files only from seated or standing positions, as well as a mostly isolated work environment and personal protective equipment to minimize her risk of contracting COVID-19. Sugerman failed to respond to the offer. Instead, she obtained medical leave covering the period from her assignment to Paul Revere through

12

January 23, 2023, and ultimately retired two weeks before her leave expired, in accordance with her preexisting plans.

Sugerman insists that she was not obligated to respond to the District's offer because it failed to "present[] [her with] evidence/proof that [the alternative accommodations] would not put [her] 'at a high risk for severe complications . . . from COVID-19 infection[.]'" She goes so far as to suggest that the District should have independently "consult[ed] with the District's doctor(s) . . . or . . . Sugerman's doctor(s)" before offering any accommodation. Sugerman's argument inverts long-standing legal precedent that requires the *employee* to provide medical justification to the *employer*. (*King*, *supra*, 152 Cal.App.4th at p. 443.) She cites no authority that supports shifting this burden to the employer. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 ["'When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"'"].)

The undisputed facts show that Sugerman ended the accommodations process by failing to provide relevant details about her medical limitations, wordlessly rejecting the District's offered accommodation, taking medical leave, and retiring. Accordingly, her reasonable accommodation and interactive process claims are subject to summary judgment.

**B. *Discrimination and Retaliation Claims***

1. *Relevant legal principles*

FEHA prohibits an employer from discriminating on the basis of an employee's age or physical disability. (§ 12940, subd. (a).) It also makes it unlawful for an employer to retaliate against an employee for "oppos[ing] any practices forbidden" by FEHA. (§ 12940, subd. (h).) An employer moving for summary judgment meets its initial burden on these claims by presenting evidence that either (1) one or more elements of the plaintiff's

prima facie case is lacking, or (2) the employer acted for a legitimate, nondiscriminatory reason. (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 32 (*Zamora*).)

"'A prima facie case for discrimination "on grounds of physical disability under the FEHA requires a[n] [employee] to show: (1) [s]he suffers from a disability; (2) [s]he is otherwise qualified to do h[er] job; and[] (3) [s]he was subjected to adverse employment action because of [her] disability."'" (*Doe, supra,* 43 Cal.App.5th at p. 734.) Similarly, to establish a prima facie case of retaliation under FEHA, an employee must show that "(1) [she] engaged in a 'protected activity,' (2) the [District] subjected [her] to an adverse employment action, and (3) a causal link existed between the protected activity and th[at] . . . action." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)

        2.    *Analysis*

Sugerman's discrimination and retaliation claims fail because she cannot demonstrate that she "was subjected to adverse employment action." (*Doe, supra,* 43 Cal.App.5th at p. 734; *Yanowitz, supra,* 36 Cal.4th at p. 1042.) An adverse employment action is any action by the employer that "materially" and "adverse[ly]" "affect[s] the terms and conditions of employment." (*Yanowitz,* at p. 1036.)

The only adverse employment action Sugerman alleges is the District's failure to accommodate her disability. But "[n]o court has ever held that a failure to reasonably accommodate an employee's disability—which is a separate cause of action under FEHA . . . —can qualify as the adverse action underlying a discrimination or retaliation claim. 'Were the law otherwise, every time an employee was denied a requested accommodation, he would be able to "double dip" by asserting both . . . failure-to-

14

accommodate and . . . [discrimination or] retaliation claims'" for identical conduct.[9] (*Doe, supra*, 43 Cal.App.5th at pp. 735–736.)

In her reply brief, Sugerman argues that the District's failure to offer her a remote position effectively coerced her into resigning, amounting to constructive discharge. (*St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 315 (*St. Myers*) ["'"Constructive discharge, like actual discharge, is a materially adverse employment action"'"].) Sugerman forfeited this argument because she failed to raise it in her opening brief. (*United Grand Corp., supra*, 36 Cal.App.5th at p. 158 [appellate courts "will not ordinarily consider issues raised for the first time in a reply brief"].)

Forfeiture aside, Sugerman's constructive discharge theory fails on the merits. "The conditions giving rise to . . . resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1246 (*Turner*).)

As a matter of law, neither the District's failure to offer Sugerman her preferred accommodation nor its offer of alternate accommodations—even though Sugerman personally believed the offer was unreasonable—rise to the level of intolerably adverse working conditions required to establish constructive discharge. (*St. Myers, supra*, 44 Cal.App.5th at p. 318 ["'"A change that is merely contrary to [an] employee's interests or not to the employee's liking is insufficient"'"].) Moreover, it is undisputed

---

[9]     The case Sugerman cites for the contrary proposition is inapposite. (See *Wallace v. County of Stanislaus* (2016) 245 Cal.App.4th 109, 134 [placing a disabled employee on mandatory leave constitutes an adverse employment action].)

that Sugerman originally intended to retire by January 2023 for reasons unrelated to her disability. Such preexisting intent is inconsistent with a constructive discharge theory. (*Turner*, *supra*, 7 Cal.4th at p. 1245 [constructive discharge occurs when "'the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will'"].)

Because the District showed that Sugerman cannot demonstrate an adverse employment action, it is entitled to summary judgment on her discrimination and retaliation claims. (*Zamora*, *supra*, 71 Cal.App.5th at p. 32.) The parties' alternative arguments are moot.[10]

### C.   *Harassment Claims*

#### 1.   *Relevant legal principles*

To prevail on a harassment claim under FEHA, a plaintiff must show that they were subjected to "offensive comments or other abusive conduct" that is (1) based on a "protected characteristic" (here, [age] or a claimed disability) and (2) "sufficiently severe or pervasive as to alter the conditions of [his] employment." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 871 (*Serri*).)

#### 2.   *Analysis*

Sugerman failed to allege any conduct constituting harassment. Instead, she attempts to characterize as harassment the conduct underlying her reasonable accommodation and interactive process claims. But "disability

_____

[10]   These arguments include whether: (1) the District had a legitimate business reason for not providing Sugerman her desired accommodation; (2) the District's stated reason was pretextual; (3) the District's accommodation policies unjustly favored those seeking remote positions for religious (rather than medical) reasons; and (4) Sugerman opposed any unlawful practice.

harassment is distinguishable from discrimination" and related claims.  (*Doe*, *supra*, 43 Cal.App.5th at p. 736.)  "'[D]iscrimination refers to bias in the exercise of official actions on behalf of the employer, and harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace[,]'" (*Serri*, *supra*, 226 Cal.App.4th at p. 869) while "harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706, 708.)  The discriminatory conduct alleged in Sugerman's complaint cannot support a claim for harassment.

## DISPOSITION

The judgment is affirmed.  The District is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
SIGGINS\*

We concur:

_____, Acting P. J.
CHAVEZ

_____, J.
RICHARDSON

---

\* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.